## TRUMBULL v. HARRIS.

### Opinion delivered March 18, 1912.

EVIDENCE—VARYING WRITING BY PAROL.—Proof of a collateral agreement not inconsistent with the terms of a written contract, and constituting in part the consideration therefor, may be made by parol evidence.

Appeal from Montgomery Circuit Court; *C. T. Cotham,* Judge; reversed.

#### STATEMENT BY THE COURT.

Appellee brought this suit against the appellants to recover damages for an alleged breach of contract. This suit is based on the following contract, which was entered into on May 2, 1907:

"Know all men by these presents that Wm. Harris of Black Springs, Arkansas, Montgomery County, party of the first part, and the Trumbull-Danville Lumber Company, of Black Springs, Montgomery County, Arkansas, party of the second part:

"That party of the first part agrees to manufacture all the timber on the J. T. Petty tract of timber containing 480 acres, more or less, in a merchantable manner, in such sizes as the party of the second part may from time to time direct, including cutting of the logs, hauling same to mill, piling the lumber and kiln drying such portions of it as the party of the second part may require, in consideration of the sum of six dollars ($6) per thousand feet. The party of the second part agrees to allow the party of the first part the use of all necessary lumber for mill shed and houses the party of the first part may require, and all such lumber so used is to revert to the party of the second part upon completion of this contract. The party of the first part agrees to quarter-saw such oak as the party of the second part may require at ten dollars per thousand feet. The party of the first part agrees to allow the party of the second part to withhold the sum of one dollar per thousand feet on all lumber furnished the party of the second part, and whatever above one dollar that the party of the first part desires to pay until such time as the party of the first part reimburses the party of the second part for such sums of money as the party of the second part may advance for the purpose of the sawmill and equipment and interest. This contract is to remain in force by mutual agreement between both parties until such time as is mutually agreed to terminate the same.

"The party of the second part agrees to pay the party of the first part on the 10th of each month for all the lumber manufactured during the previous month, after deducting one dollar per thousand to be applied to the credit of the party of the first part, on the money advanced by parties of the second part for the purchase of mill and equipment and supplies, also deducting for commissary goods furnished the party of the first part during the previous month.

"Party of the second part agrees to pay the party of the first part $2.75 per thousand feet for all lumber burned in the dry kiln.

"Party of the first part agrees to furnish lumber to the party of the second part as fast as the capacity of his mill will permit, unavoidable delays excepted."

After the contract was executed, appellee made a contract with the Southern Boiler & Engine Works for the purchase of

certain sawmill machinery for the price of $1,800. This machinery was erected on the land embraced in the contract, and the Trumbull-Danville Lumber Company paid the freight and made the first payment for the appellee. Appellee also erected some houses on the land preparatory to running his mill, and the money to do this was advanced by the lumber company; the advances so made amounted to something over $900. . Appellee cut about 200,000 feet of lumber. After that the Bear State Lumber Company succeeded in business the Trumbull-Danville Lumber Company, and the former company proceeded to carry out the contract of the latter. Appellee says there was no change in their manner of doing business, and that their contract went on as before with Trumbull and Danville as managers of the Bear State Lumber Company. Appellee then cut about 400,000 feet of lumber, and delivered it to the Bear State Lumber Company under his contract with the Trumbull-Danville Lumber Company. He said that about the last of November Trumbull forbade him cutting any more pine on the land, and refused to meet the running expenses of his sawmill as it had been doing before. Appellee then went on and cut oak timber on the tract, but did not cut any more pine. Appellants refused to advance him any more money with which to pay the purchase price of his mill machinery, and the vendors of the mill machinery came and took it away from him. On the 28th of January, 1908, appellee and the Bear State Lumber Company entered into the following contract, in writing:

"This agreement made and entered into on the 28th day of January, 1908, by and between William Harris, party of the first part, and the Bear State Lumber Company, party of the second part.

"The party of the first part agrees to deliver to the party of the second part the following property, towit: One sorrel horse mule, about ten years old and sixteen hands high. One dark bay horse mule about fourteen years old and about sixteen and one-half hands high, and one log wagon and all the lumber and logs cut on the Petty tract of land, and all buildings placed there by the party of the first part, and one set of double harness; and, in consideration of the above, the party of the second part agrees to satisfy one chattel mortgage for $319.50,

given by the party of the first part to the Caddo Valley Bank, and dated 12th day of August, 1907, and one chattel mortgage given by the party of the first part to Trumbull & Danville for $........ on machinery, and all the notes that Trumbull & Danville hold against him, and to settle store accounts as follows: B. E. Milam, $10.70; R. M. Reece, $19.45; Rowton Bros. & Bradberry, $1.40; Abernathy & Crane, $7.65; Graves & Johnson, $3.59; Black Springs Mercantile Co., $21.45; and one note given to W. E. Watkins & Bro. for one wagon, and $12.50 to be paid in the store.

"And it is agreed and understood by and between the parties hereto that this contract takes effect immediately."

Appellee says that he had about 200,000 feet of lumber on hand when this contract was made, and it was turned over to the lumber company in payment of what he owed it, and the other persons named in the contract of January 28, 1908. Appellee stayed on the land a month after this contract was made, but he never cut any more timber. Appellants adduced evidence tending to show that appellee never did pay them for the first advances they made in the purchase of his machinery for it, and that appellee was indebted to them during the whole time the contract was in force, and for that reason they refused to honor his pay roll in November; that they refused to make him further advances on the payment of the purchase price of his machinery because he was indebted to them, and that the vendors of the machinery took the machinery away from him in the fall of 1907 because he failed to meet his payments. Appellants also offered to prove that, at the time the contract of January 28, 1908, was entered into, it was understood between the parties that the contract was rescinded, and that appellee was turning over to appellant all of the property and did not intend to cut any more timber. The court sustained objection to this character of testimony, and the appellants duly saved their exceptions thereto.

The jury returned a verdict in favor of the appellee for damages in the sum of $1,200. The case is here on appeal.

*Gibson Witt* and *J. I. Alley*, for appellants.

1. Extrinsic evidence is admissible for the purpose of

showing that an executory contract had been settled.   92 Ark. 50; 94 *Id.* 471; 90 *Id.* 272; 95 *Id.* 450.

2.   The agreement of January 28, by its terms put an end to the original contract.   93 Ark. 447.

*Pole McPhetrige, James S. Steel, J. S. Lake* and *James D. Head,* for appellee.

1.   The settlement is plain and unambiguous, and can not be varied nor contradicted by oral testimony.   75 Ark. 55; 9 Cyc. 773-4.

2.   There is no error in the admission or rejection of testimony.   96 Ark. 190; 92 *Id.* 310.

HART, J., (after stating the facts).   It is first contended by counsel for appellant that the agreement of January 28, 1908, by its terms put an end to the original contract, and that under it appellee is precluded from maintaining this action, but we can not agree with them in this contention.   In this respect, this case is different from that of the *Cherokee Construction Company* v. *Prairie Creek Coal Mining Company, ante* p. 428.

In that case, the language of the new or substituted agreement was very broad and comprehensive.   It purported to be in full settlement of all matters and differences between the parties, and the court held that the language of the contract embraced all matters that might be in dispute between the parties under the original contract, and that parol evidence could not be introduced to vary the terms of the new contract or agreement.   There it was attempted to be shown that certain matters embraced in the original contract were not intended to be included in the settlement, and the court held that under the express language of the new agreement this could not be done because it would operate to contradict or vary its terms. Here the language is not sufficiently broad and comprehensive to preclude appellee from maintaining this action for damages for breach of the original contract.

It is next contended by counsel for appellant that the court erred in refusing to admit testimony to the effect that it was understood or agreed between the parties at the time the new agreement was made that the old contract was at an end, and that the new contract was made for the purpose of rescinding it altogether.   This testimony, we think, was competent.   It

is the theory of the appellee in this case that appellants committed a breach of the contract the first of December, 1907, by failing to meet his pay roll, and that appellee was prevented from performing his contract by this act; that, having been prevented from performing his contract, he turned over the property in satisfaction of what he owed appellants, and in order to get them to pay other outstanding indebtedness which he owed. He admits that he turned back to them all the houses and all the other property which he used in running the saw mill, and that the vendors of the machinery took that away from him, but he says that this was done after appellants had refused to allow him to perform his contract with them according to its terms, and that therefore he could not run his mill, and had no use for the property connected therewith.

On the other hand, appellants claim they advanced appellee more than $900 to be used in paying for his machinery and in making preparations to perform his contract; that appellee never paid any of this indebtedness, and that because of this fact they refused to meet his pay roll on December 1, 1907; that on January 28, 1909, they had a full settlement of all matters included in the original contract, and that it was understood between them that the original contract was terminated thereby.

"While the contract remains executory on both sides, an agreement to annul on one side is consideration for the agreement to annul on the other, and *vice versa.*"   9 Cyc. 593-4.

We do not think that the effect of the excluded testimony was to vary or alter the terms of the contract of January 28, 1908, as copied in the statement of facts. That agreement went merely to the settlement of the indebtedness between the parties, and did not purport to be an agreement between them as to all matters embraced in the original contract.

The evidence excluded tended to establish a collateral agreement which involves no contradiction of the written agreement, and does not in any way vary its terms. In other words, the excluded evidence did not in any manner tend to contradict or vary any language of the contract of January 28, 1908, or any of the terms thereof, but only tended to establish a distinctly collateral agreement between the parties which was not

considered necessary to be put in writing when the written agreement was executed, but which in fact constituted, in part, the consideration for it.    The authorities are that proof of such an agreement not inconsistent with the terms of the written contract, may be made by parol evidence.    *Weaver* v. *Fletcher,* 27 Ark. 510; 17 Cyc. 713-17.

For the error as indicated in excluding this testimony the judgment must be reversed, and the cause remanded for a new trial.