## Morris *v.* Trinkle.

[No. 13,492. Filed February 20, 1930. Rehearing denied June 25, 1930. Transfer denied November 6, 1930.]

*Russell Blair* and *Adamson & Gallagher*, for appellant.
*Dix & Dix*, for appellee.

McMAHAN, J.—Action by Leonard E. Trinkle against
Gordon C. Morris, doing business under the name of

"The Terre Haute Buick Company." Trial by jury resulted in a verdict and judgment in favor of the plaintiff for $1,125, hence this appeal.

Appellant complains of the action of the court in overruling his motion to strike out parts of the complaint; in overruling his motion to make each paragraph more specific; in overruling his motion to separate the several alleged causes of action into separate paragraphs; in overruling his demurrer to each paragraph of complaint, and in overruling his motion for a new trial.

The first paragraph of complaint alleges that on April 7, 1926, appellee, acting through his agent, Mary Trinkle, and appellant, entered into a written agreement whereby appellee ordered a Buick automobile from appellant for a consideration of $2,099, less an allowance of $75, for a used car. A copy of the order or contract is set out in the complaint. Its material provisions, so far as this action is concerned, are as follows: "It is agreed that the only guarantee, either express or implied, given on this sale is that which the Buick Motor Company gives in their published catalogue, a copy of which guarantee is printed on the reverse side of this contract, and the purchaser expressly agrees that no claim shall be made against the company except under said published guarantee."

On the reverse side of the order, and as a part of the Buick Motor Company guarantee, referred to, appeared the following:

### The Buick Ninety-Day Guarantee

"The automobiles furnished by the Buick Motor Company are warranted to be free from defects in material and workmanship under normal use and service, our obligation under this guarantee being limited to making good at our factory any part or parts thereof which shall, within ninety days after delivery to the original purchaser, be returned to us

with transportation charges prepaid, and which our examination shall disclose to our satisfaction to have been thus defective; this guarantee being expressly in lieu of all other guarantees expressed or implied, and of all other obligations or liabilities on the part of the Buick Motor Company, and we neither assume, nor authorize any person to assume for us, any liability in connection with the sale of Buick automobiles. This guarantee shall not apply to any Buick automobiles which shall have been repaired or altered outside of our factory in any way so as, in our judgment, to affect their stability or reliability, nor which have been subject to misuse, negligence or accident."

Then appears a statement over the name of the Terre Haute Buick Company reading as follows:

"In addition to the guarantee made by the Buick Motor Company, the Terre Haute Buick Company extends to its patrons the following service and respectfully requests that they clearly understand the extent and nature of this additional service which we render: For a period of thirty days from date of delivery, Terre Haute Buick Company will make any and all necessary adjustments without charge which are not caused by accident, or misuse, or negligence. Customers' cars are driven by our employees at customer's own risk. No contract is binding on the Terre Haute Buick Company until accepted by the manager or a person in authority.

TERRE HAUTE BUICK CO."

It then alleges that appellee delivered his old automobile of the value of $75 to appellant; that, on May 15, 1926, appellant delivered to appellee a Buick automobile of the model ordered, at which time appellee paid appellant $1,050 in cash and executed his promissory notes for the balance of the purchase price; that the automobile so delivered to appellee was not free from defects in material and workmanship; that it was so

defective that, when operated under normal conditions over level roads, it did not run smoothly, but would vibrate; that the motor was improperly balanced or hung on the chassis; that appellant was familiar with the extent and degree of the defects and improper construction; that, on May 17, 1926, appellee returned the car and requested appellant to make the necessary adjustments to correct the defects and cause the same to operate properly; that appellant undertook to do so but wholly failed in such attempt; that between May 17 and June 7, 1926, appellee returned the car to appellant a great number of times for the purpose of having appellant make necessary corrections and adjustments in material and workmanship so as to make the car operate properly; that, on each of such occasions, appellant undertook to make the necessary corrections, but wholly failed in his efforts; that, on June 8, 1926, pursuant to a request of appellant, appellee returned the car to the branch factory of the Buick Motor Company at Indianapolis, for examination and adjustment; that the agents of the Indianapolis factory examined the car and declared the same defective in particulars unknown to them, but that they also undertook to remedy the defects and failed; that, on June 17, appellee returned the car to the Indianapolis factory a second time, when they undertook to correct the defects and again failed; that, on June 21, he returned the car to appellant and demanded that appellant make the necessary adjustments and corrections to put the same in good running condition, but that appellant refused to do so; that, on June 29, 1926, appellee tendered appellant $250 in full of balance due on automobile and demanded that appellant return the notes which he had given and that appellant turn over to appellee a certificate of title to car, all of which appellant refused to do, but that appellant, on said last-named day, by force and violence took said automo-

bile out of a public garage where it was being kept by appellee, and had failed to return the same or any part of the purchase price appellee had paid, had failed to return the used car which appellee had delivered to appellant and had also failed to return the notes which appellee had given appellant as evidence of the balance of the purchase price.

The second paragraph of complaint, after alleging the facts concerning the execution of the contract for the purchase of the automobile and setting out a copy of the contract the same as is set out in the first paragraph, then alleges that appellant delivered the Buick automobile to appellee May 15, and represented it to be a new car; that it had been driven but a few miles; that appellant, prior to such delivery, took appellee for a short ride in the city of Terre Haute, at which time appellee called appellant's attention to the fact that the car did not run smoothly, but that it moved with a series of jerks; that appellant said it was new; that the jerking was caused by some loose adjustments that could and would be made by appellant; that appellee was a dentist and had no knowledge of the mechanism of automobiles and had to and did depend on appellant's statement.

It is then alleged that the statements of appellant were false; that, instead of having been driven but three miles, as had been stated by appellant, he had had the car for two and a half months and had driven it several hundred miles; that the jerking was not caused by a minor loose adjustment, but was caused by a mechanical imperfection and defect, the nature of which was unknown to appellee. The manner in which the car jerked and vibrated while being operated is described, and it is alleged that the car was not capable of being repaired; that appellant knew his statements so made to appellee were false and were made for the purpose of cheating and defrauding appellee; that appellee, believing and relying

upon such statements, paid appellant the $1,050, and executed the notes for the balance of the purchase price. The attempts to remedy the defects are then set out in substance the same as in the first paragraph; that appellee had the car examined by expert mechanics; that he then, for the first time, learned the car was not a new one and that, at the time it was delivered to him, its reasonable value was $1,300; that, on June 29, 1926, he tendered appellant $250 as the remainder due on the purchase price and demanded the return of the notes he had given appellant and that appellant turn over to him a certificate of title to the car, which appellant refused to do; that appellant thereafter, by force, took possession of the car to appellee's damage.

There is no merit in appellant's contention that the court committed reversible error in overruling his motion to strike out his motion to make more specific, his motion to separate, and his demurrer to the several paragraphs of complaint.

In addition to an answer of denial, appellant filed an affirmative answer admitting the execution of the sales contract as alleged in the complaint, and alleges that thereafter, on May 15, 1926, appellant and appellee entered into another agreement for the sale of the Buick automobile, setting out the terms of the sale, with the provisions that the title to the automobile should remain in appellant until paid for in full; that, on default in making any payment when due, appellant should have the right to the possession of the automobile, and the right to enter any place where the car was located and take possession thereof without notice, and giving him the right to retain all payments theretofore made as rent and liquidated damages.

The answer further alleged that, pursuant to the written agreement as modified by this last agreement, appellant delivered the car to appellee, who executed to

appellant 12 notes for the unpaid part of the purchase price, payable one each month for 12 months; that, by virtue of said agreement, the title to the automobile remained in appellant; that appellee paid one note of $96.24 June 15, 1926, but failed and refused to make any other payments, and that, by reason thereof, appellant took possession of the automobile and retained the money theretofore paid as liquidated damages. Appellant also filed an answer alleging that, after he had taken possession of the automobile, appellee, with full knowledge of all the facts, offered to submit the matter to arbitration and to pay any amount that might be found to be owing appellant, thereby ratifying appellant's act in taking possession of the automobile.

The specifications in the motion for a new trial relied on by appellant are: (1) That the verdict is contrary to law; (2) excessive damages; (3) error in giving instructions; (4) in refusing to give instructions 5, 8, 9, 11, 14, 17, 18 and 22 tendered by appellant; (5) misconduct of counsel; and (6) admission of evidence.

The evidence, without conflict, shows the execution of the sales contract, the delivery of the automobile thereunder by appellant to appellee, the delivery by appellee to appellant of a used car of the value of $75, the payment by appellee of $1,050 in cash, and the execution of notes for balance of purchase price, and the entering into of the agreement when the car was delivered to appellee that the title should remain in appellant until purchase price was paid in full.

The evidence also shows that when the car was delivered to appellee, one of appellant's agents took appellee for a ride in it; that appellee complained about the way the car ran, saying that it was not performing right, that it did not sound right, jerked back, moved forward with a series of jerks, etc. Appellant's agent, at the time, stated that there was nothing wrong with

the car, that it was stiff; that after it had been driven a while, it could be adjusted. Whereupon, appellee paid appellant $1,050 in cash and took the car. At this time, appellant's agent presented to appellee, and appellee signed and returned to appellant, the conditional-sale contract. Appellee returned the new car to appellant on the second day following for repairs, also on the following day, and on many other occasions during the next three weeks, when, at the request of appellant, he took the car to a branch factory of the Buick Motor Company at Indianapolis, where work was done on it. Appellee again took the car to the plant at Indianapolis on June 17, and more work was done on it. On June 21, appellant refused to do any more work on the car. On June 22, appellant's agents called at a public garage, where the car was stored, and, under the pretense of doing some work on the car, took it away. Upon learning that appellee had not authorized it to be taken, the garage proprietor got it back the same day. On June 22, appellee served a notice on appellant, in which he offered in various ways to secure appellant against payment of the balance of the purchase price pending the settlement of the dispute. On the afternoon of June 29, appellee tendered appellant $250, and served him with a written demand for the delivery of the unpaid promissory notes and the certificate of title to the car. Later, on the same afternoon, appellant's agents, using a key which appellant had secured from the Buick factory, unlocked, and, over the protest of the garage man and while he was trying to close the door to prevent their escape, drove the car out of the public garage where appellee had stored it. The car was never mistreated while in appellee's possession and no repairs or adjustments were made on it except by appellant and his agents. The car was later sold by appellant to another person, and, on January 9, 1927, while in the same condition as when

first delivered to appellee, and, while being driven along a concrete road at a speed of about 35 miles per hour, exploded. The instrument board was torn off and pieces of wood and iron flew up through the floor-board, hitting the top and flying into the back of the car. The automobile, at the time it was in appellee's possession, was of the reasonable value of $1,300. Appellant never returned to appellee the $1,050, the old car, the new car, or the promissory notes.

The only conflict of any consequence in the testimony had to do with the condition of the car. Appellee and his wife testified that, during the entire time it was in his possession, it ran, at low speed, with a series of jerks or backlashes; that it was very noisy and, when advanced to a speed of around 35 miles per hour, had a heavy vibration of such force as to give the effect of holding an electric vibrator and sufficient to blur the vision of the driver. The garage man testified that it had a bucking or jerking motion when moving. Five automobile mechanics testified that they rode in the car, and that, at a low speed, there was a "jerking and knocking in the entire automobile," "a backward-and-forward movement," "a backlash and jerking," and that, at 30 miles an hour and over, there was "a vibration in your arm," "an awful vibration," "a vibration on the steering wheel," "a terrible vibration." Each made such examination of the car as was possible without tearing down the engine, and gave his opinion in various ways that "the motor was out of balance, out of true," "something underbalanced or out of line," "something out of true in the motor," "an improper balancing of the flywheel," etc. Three of them testified from their examination that, in their opinion, the automobile would "break, fly apart," "burst and fly to pieces," "burst or let loose and hurt somebody in the car."

In support of the contention that the verdict is contrary to law, appellant says there is no evidence to support the allegation that the motor was improperly balanced or improperly hung in the chassis, and that there is no evidence to prove that the alleged jerking of the automobile was not caused by some minor loose adjustment. There is no merit in this contention. Five witnesses, who testified for appellee, said the motor was out of balance; that it was not properly hung in the car; that the fly wheel was not properly balanced.

In so far as the amount of the recovery is concerned, the evidence shows that when the automobile was delivered to appellee, it was worth but $1,300. He had paid $1,050 in cash and had turned in an old car of the value of $75, and had tendered $250 to appellant, a total of $1,375. True, he had not paid what the contract called for, but, because the automobile was not as warranted and as represented by appellant, it was worth but $1,300. Appellee had already paid $1,125 on the purchase price, and had tendered appellant $250 more. Appellant, not only seeks to keep the car, which was worth $1,300, but he desires to keep the $1,125, which appellee paid him for the car. This he cannot do. Under the rule announced in *Peoples State Bank* v. *Hall* (1925), 83 Ind. App. 385, 148 N. E. 486, appellee was entitled to recover the $1,125 he had paid on the car.

We cannot agree with appellant that the automobile sold to appellee was not subject to and covered by the warranty of the Buick Motor Company printed on the reverse side of the contract. When appellant sold the automobile subject to the warranty of the Buick Motor Company on the reverse side of the order, he thereby adopted such warranty as his own. *Ventura Mfg., etc., Co.* v. *Warfield* (1918), 37 Cal. App. 147, 174 Pac. 382; 24 R. C. L. 158, §430. See *Loxter-*

*camp* v. *Lininger Implement Co.* (1910), 147 Iowa 29, 125 N. W. 830, 33 L. R. A. (N. S.) 501.

The fact that the conditional-sale contract dated May 15 contains no warranty and states that it contains the entire contract between the parties does not relieve appellant from the warranty theretofore made and contained in the contract of April 7. There is nothing inconsistent in the two contracts, and they may both stand without in any way interfering with each other. *Metzger* v. *Hubbard* (1899), 153 Ind. 189, 54 N. E. 761; *Adams* v. *Adams* (1903), 160 Ind. 61, 66 N. E. 153; *Powell* v. *Nusbaum* (1922), 192 Ind. 358, 136 N. E. 571; *Trumbull* v. *Harris* (1912), 102 Ark. 669, 145 S. W. 547; *Myers* v. *Carnahan* (1907), 61 W. Va. 414, 57 S. E. 134; *Security, etc., Ins. Co.* v. *Ellsworth* (1906), 129 Wis. 349, 109 N. W. 125; *Menefee* v. *Rankins* (1914), 158 Ky. 78, 164 S. W. 365. The rule upon this subject is well stated in 13 C. J. 603, §628, where the author, after stating the rule as to inconsistent agreements, said: "But where it is claimed that by reason of inconsistency between the terms of a new agreement and those of the old, the old one is discharged, the fact that such was the intention of the parties must clearly appear. Where the contracts may stand together a subsequent will not supersede a prior one. A new contract with reference to the subject-matter of a former one does not supersede the former and destroy its obligations, except in so far as the new one is inconsistent therewith, when it is evident from an inspection of the contracts and from an examination of the circumstances that the parties did not intend the new contract to supersede the old, but intended it as supplementary thereto."

The contracts in question were prepared by appellant on blanks furnished by him. If they are of doubtful meaning, or if two inferences can be drawn from them as to the intention of the parties, one

inference that it was the intention and understanding of the parties that appellant was warranting the automobile, and the other that the warranty contained in the first was intended to be withdrawn so that there would be no warranty, the inference or construction in favor of the purchaser should be adopted and given effect. Any other holding would enable a dealer to make all kinds of warranties and representations in a preliminary order or contract like the one of April 7, as a bait or snare to entrap the unwary, and then, by a subsequent conditional-sale contract, the main purpose of which is supposed to be to secure the payment of the purchase price, relieve himself of all obligations and warranties contained in the first contract, however potent such warranties may have been in effecting a sale.

The conditional-sale contract in the instant case is a remarkable instrument, the real import of which can be grasped only after a careful study thereof by one well versed in the law of contracts. For instance, in paragraph 7, is a provision whereby appellee, as buyer, authorized "any attorney of any court of record to appear for him in any proceedings, which may be brought by the seller for the purpose of collecting any sum of money that may be due hereon or for the recovery of the property upon the violation of any of the terms of this agreement, authorizing the said attorney for the buyer to confess judgment against the buyer"—a provision which was not enforceable in this state when made, and the execution of which is now prohibited under penalty. Acts 1927 p. 656, §455 Civil Code, §640 Burns 1926, describes how a confession of judgment under a power of attorney may be taken. Another amazing provision is found in paragraph 11, wherein it is stated that the buyer had investigated the title of the seller to the automobile and of his right to sell the same, and that the buyer agreed to accept from the seller or his assigns the title as

it then rested in the seller. Comment as to the possible effect of such a provision is not necessary. If it does not characterize the instrument of which it is a part as a cut-throat contract; it would be difficult to imagine what would be the requisites of such a contract.

The evidence is ample to sustain a verdict on either paragraph of the complaint. We will not extend this opinion for the purpose of discussing other contentions of appellant. We have given each of them careful attention and find no reversible error. A right result has been reached.

Affirmed.