13467

LIQUID CARBONIC CO. v. COCLIN *ET AL.*

(164 S. E., 895)

*Messrs. Searson & Searson, Brown & Bush* and *Harley & Blatt,* for appellants,

Messrs. *H. L. O'Bannon* and *T. M. Boulware,* for respondent,

August 9, 1932.

The opinion of the Court was delivered by MR. JUSTICE STABLER.

In the summer of 1925 the plaintiff sold and delivered to the defendant A. H. Coclin, following the execution of a written contract, an electric soda fountain outfit with double capacity Frigidaire unit, and received from him in the transaction an old outfit, $288.00 in cash, and, as evidence of and security for the balance of the purchase price, two promissory notes for $1,511.00 and $1,080.00, respectively, and a chattel mortgage of the outfit sold him. Almost immediately after the installation of the outfit and from time to time thereafter, defendant complained to plaintiff that it was not functioning properly, and plaintiff sent representatives to Allendale to adjust it. Eventually, after having paid some of the installments due on the notes, defendant defaulted; and plaintiff commenced this suit, in February, 1928, for foreclosure of its mortgage.

As a defense to the action, defendants set up failure of consideration; that at the time the contract was made, plaintiff represented that the outfit to be shipped would keep in a frozen and merchantable condition all ice cream placed in the large compartments, that it would keep the plain and carbonated water of the fountain refrigerated at all times to the temperature of between 38 and 40 degrees F., and that, in order to properly operate the outfit, the Frigidaire

unit would not be required to run, under any circumstances, more than fifteen hours out of any twenty-four; that the outfit furnished by plaintiff to them failed to keep the ice cream and the water as so represented, and that the Frigidaire unit, instead of operating fifteen hours out of twenty-four, ran continuously without interruption and even then failed to refrigerate the ice cream container and the water of the fountain; that despite their repeated notification to plaintiff of these conditions and plaintiff's efforts to correct the defects, the outfit never properly performed its functions; and that the plant was of little or no value to them. They also set up a counterclaim, based upon practically the same state of facts, for damages for breach of warranty of soundness and reasonable fitness of the outfit for the purpose for which it was manufactured and sold, two of the items being the value of ice cream lost through failure of the outfit to keep it frozen and the extra cost of electric current to operate the machinery.

The case was referred to the master for Allendale County, who duly filed his report. He found that under the testimony the plaintiff had knowledge of the purposes for which the plant was purchased and that under its warranty it was its duty to furnish a plant of reasonable soundness and fitness for such purposes, and that the outfit furnished, even after repeated efforts by the plaintiff to adjust it, would not perform the services reasonably to be expected of it; and so concluded that there had been a partial failure of consideration. In order to ascertain the damages suffered by the defendants on this account, that is, the difference between the actual value of the outfit in its defective condition and its value had it been as warranted, he appears to have assumed that the latter value was the same as the purchase price and to have included in the purchase price the old outfit (not mentioned in the contract), delivered to the plaintiff by the defendants, the value of which he placed at $1,000.00, and the purchase price named in the contract, $2,879.00, making

a total of $3,879.00. He found the value of the outfit in its defective condition to be "not over about two-thirds of the price charged by the plaintiff," and fixed such value at $2,-600.00, thus allowing an abatement of $1,279.00, and found that defendants were entitled to the following credits: The old plant, $1,000.00; $288.00 paid upon the execution of the contract; and $881.00 paid on the purchase money notes—aggregating $2,169.00. Deducting this amount from the actual value or abated purchase price, $2,600.00, he found that there was due on the notes a balance of $431.00, which, with interest and attorney's fees, amounted to $626.95.

As to the counterclaim, he sustained the defendant's claim for loss of ice cream due to the plant's failure to function and for extra cost of electric current, finding the amount of their damages from these causes to be, respectively, $730.00 and $500.00; and recommended that defendants have judgment on their counterclaim for $1,230.00. The net result of his findings and conclusions was that the defendants should have judgment against the plaintiff for $603.05.

The matter came on to be heard upon exceptions to the master's report, before Judge E. C. Dennis, who overruled the master and filed a decree giving the plaintiff judgment for the full amount unpaid on the notes (including interest and attorney's fees), $2,479.31, and denying the counterclaim. From this decree defendants appeal.

We shall not discuss the exceptions seriatim, but in reaching our conclusions shall necessarily consider and dispose of all questions raised.

As to plaintiff's claim on its notes and mortgage: We think that testimony properly admitted shows unquestionably that plaintiff knew the purposes for which the outfit was purchased by defendants, and, in the absence of an express warranty or a nonwarranty clause in the written contract, there was an implied warranty of reasonable fitness, which was not excluded by the provision in the contract that, "It covers the entire agreement between

us." See *Liquid Carbonic Company v. Coclin,* 161 S. C., 40, 159 S. E., 461, 463, in which an identical contract was construed. The testimony as to the alleged defective condition of the outfit, offered for the purpose of showing a breach of the implied warranty, was none too satisfactory; but we cannot agree with the Circuit Judge, who was convinced by the fact that the fountain was in daily use that it was giving reasonable service from the first. On the other hand, we do not agree with the master in his finding as to the value of the outfit in its defective condition—we do not think the testimony justified an abatement of $1,279.00. We have given the matter very careful consideration, and we have reached the conclusion, and so hold, that under the testimony offered by both sides—which we do not deem it necessary to review—$500.00 would be a proper abatement for breach of the implied warranty. Whether the value of the old outfit should be added to the purchase price of the new outfit as specified in the contract, in order to arrive at the amount which defendants should pay, is, in our view of the matter, immaterial, since, if the value of the old outfit be added to the purchase price of the new, then such value must be credited on such purchase price. Following, for purposes of convenience, the plan adopted by the master in this respect, we have computed the amount due to the plaintiff as of August 5, 1932, as shown by the following schedule: on its notes and mortgage, and find the same to be $1,902.29,

| | |
|---|---|
| Purchase price stated in contract | $2,879.00 |
| Old outfit | 1,000.00 |
| Total purchase price | $3,879.00 |

### CREDITS:

| | | |
|---|---|---|
| Old outfit | $1,000.00 | |
| Cash payment at execution of contract | 288.00 | |
| Abatement allowed on purchase price | 500.00 | |
| Total | $1,788.00 | 1,788.00 |

Balance due on purchase price—represented by
  two notes aggregating on their face $2,591.00 $2,091.00
Payments on principal of notes.............. 881.00

Balance due on notes as principal after deducting
  payments ...............................$1,210.00

Of this amount, $130.00 would be a balance due on the
first note; and the entire amount of the second note, $1,-
080.00, would be due. Except for the first payment, the notes
were to be paid in installments of $90.00 each, on the 5th
day of each succeeding month, with interest from 4—1—26
until maturity at 6 per cent. and thereafter at the highest
rate permitted by law. Following is a statement of the in-
terest: .

On $40.00 from 4—1—26 to 3—5—27
  at 6% .......................$  2.23
On $40.00 from 3—5—27 to 8—5—32
  at 7% ........................ 15.17
On installments of $90.00 each for the
  periods and at the rates indicated:
From 4—1—26 to 4—5—27 at 6%...  5.46
From 4—5—27 to 8—5—32 at 7%... 32.60
From 4—1—26 to 5—5—27 at 6%...  5.91
From 5—5—27 to 8—5—32 at 7%... 33.08
From 4—1—26 to 6—5—27 at 6%...  6.36
From 6—5—27 to 8—5—32 at 7%... 33.55
From 4—1—26 to 7—5—27 at 6%...  6.81
From 7—5—27 to 8—5—32 at 7%... 32.03
From 4—1—26 to 8—5—27 at 6%...  7.26
From 8—5—27 to 8—5—32 at 7%... 31.50
From 4—1—26 to 9—5—27 at 6%...  7.71
From 9—5—27 to 8—5—32 at 7%... 30.98
From 4—1—26 to 10—5—27 at 6%..  8.16
From 10—5—27 to 8—5—32 at 7%.. 30.45
From 4—1—26 to 11—5—27 at 6%..  8.61
From 11—5—27 to 8—5—32 at 7%.. 29.93
From 4—1—26 to 12—5—27 at 6%..  9.06

| | |
|---|---|
| From 12—5—27 to 8—5—32 at 7%..$ | 29.40 |
| From 4—1—26 to 1—5—28 at 6%.. | 9.51 |
| From 1—5—28 to 8—5—32 at 7%... | 28.88 |
| From 4—1—26 to 2—5—28 at 6%... | 9.96 |
| From 2—5—28 to 8—5—32 at 7%... | 28.35 |
| From 4—1—26 to 3—5—28 at 6%... | 10.41 |
| From 3—5—28 to 8—5—32 at 7%... | 27.83 |
| From 4—1—26 to 4—5—28 at 6%... | 10.86 |
| From 4—5—28 to 8—5—32 at 7%... | 27.30 |

Total interest ....................$519.36    $  519.36

Total amount principal and interest due 8—5—32  1,729.36
Ten per cent. attorney's fees ................    172.93

Total amount due 8—5—32 .................$1,902.29

As to the counterclaim: In a case of this kind, the buyer may recover, in addition to general damages, any special or consequential damages which he may have suffered by reason of breach of warranty and which are the natural and direct or proximate result of the breach and may reasonably be considered as within the contemplation of the parties at the time the contract was made. 24 R. C. L., 256; 55 C. J., 868; *National Tire & Rubber Company v. Hoover,* 128 S. C., 344, 122 S. E., 858. But we agree with the trial Judge that in the present case electric current used does not constitute a basis for such damages. It seems to us that it would be going far afield to hold that the implied warranty of reasonable fitness of the outfit extended to the amount of current that would be required to operate it, or that damages from excessive consumption of electricity were contemplated by the parties when the contract was made. And this view is not, as might at first appear, in conflict with *Liquid Carbonic Company v. Coclin, supra.* In that case it was held that the following testimony, elicited during the examination of one of seller's witnesses, did not vary the terms of the written contract: "Q. And at that time (time sale was made), it was understood by your

salesman and Mr. Coclin (respondent) that one of the Frigidaire units would properly cool the things that are sold? A. When this equipment was sold to Mr. Coclin, we knew that he bought the equipment to keep his ice cream hard and to serve the public and to keep water cold." It will be observed that while the question was directed to some understanding between the parties with reference to the number of Frigidaire units that would be required to cool the contents of the outfit, the answer was not responsive to the inquiry and did not show that there was any such understanding as was suggested by the question. It merely showed, as said in the opinion, the seller's knowledge of the uses and purposes for which the equipment was purchased, so tending to support the implied warranty of reasonable fitness. It appears to us that before there could be any recovery for excessive consumption of current, it would be necessary for defendants to show an express warranty on that point; the contract contains no such warranty, and the provision therein that "it covers the entire agreement between us" would exclude from consideration any testimony tending to show an oral express warranty. We do not agree with the trial Judge, however, that the proof of loss of ice cream was too vague and remote and was insufficient to establish such loss. We think that this element of damages should be allowed and that defendants should have judgment on their counterclaim for $730.00.

The judgment of the Circuit Court must accordingly be modified so as to allow plaintiff judgment against the defendant A. H. Coclin in the sum of $1,902.29, upon which should be credited the sum of $730.00 allowed the defendants on their counterclaim, leaving a net judgment in favor of the plaintiff of $1,172.29, which bears interest from August 5, 1932; as thus modified the decree must be affirmed. And it is so ordered.

MR. CHIEF JUSTICE BLEASE and MESSRS. JUSTICES CARTER and BONHAM and ACTING ASSOCIATE JUSTICE W. C. COTHRAN concur.