12707

J. A. FAY & EGAN CO. v. MIMS *ET AL.*

(149 S. E., 246)

*Messrs. C. Birnie Johnson* and *Randolph Murdaugh* for appellant,

*Messrs. Thos. M. Boulware, J. B. Tobin,* and *Brown & Bush,* for respondents,

July 24, 1929.

The opinion of the Court was delivered by MR. JUSTICE STABLER.

On December 16, 1924, under the terms of a contract of sale entered into between the parties, the plaintiff sold to the defendant B. L. Mims, trading as B. L. Mims Lumber Company, a planing and matching machine, to be kept and used by him at his place of business at Allendale, S. C. The purchase price to be paid, as provided by the contract, was $6,470, it being agreed that the plaintiffs should receive in part payment, at the fixed value of $2,500, the planing and matching machine then owned by the defendant. The

machine sold by the plaintiff arrived at Allendale on February 12, 1925, and within a few days thereafter was installed by the defendant. Notice of its installation was given to the plaintiff, which then sent one of its experts to Allendale to demonstrate the machine and to instruct the purchaser in its proper use. This expert apparently ran up against all kinds of difficulties and remained in Allendale until about March 23, having failed in the meantime to demonstrate the machine to the satisfaction of the purchaser. The defendant, not being satisfied, advised the plaintiff, more than 30 days after the machine had reached its destination, that he would not accept it. He indicated, however, to the seller that he was willing to surrender it if plaintiff would return to him the old planer and matching machine. The plaintiff declined to do this, and, upon the defendant's refusal to surrender the new machine, brought this action in claim and delivery, on March 25, 1925, for its recovery, the plaintiff taking possession of the property, which was not reclaimed by the defendant. The plaintiff also demanded actual and punitive damages for the defendant's alleged unlawful and willful retention of the machinery.

The defendant answered, alleging that the machine delivered to him was not the kind of machine he contracted for and was unsound and unfit for the purpose for which it was sold to him, and also set up a counterclaim for $20,000, actual and punitive damages, for breach of the contract of sale. His contention was that he had purchased a No. 666 planer and matching machine, ball-bearing throughout, while the plaintiff had shipped and delivered to him a No. 666 babbitt-bearing machine.

The case was tried before his Honor, Special Judge Ramage, and a jury, upon the issue as to whether or not the purchaser received the machine contracted for, and a verdict for $15,000 actual damages was given for the defendant on his counterclaim. On motion by plaintiff for a new trial, the Court passed an order granting same unless the defend-

ant should remit $5,000 on the record. The defendant complied with the order, and judgment for $10,000 was entered against the plaintiff. At the proper time during the trial a motion was made by plaintiff for a directed verdict, both as to punitive damages and for the possession of the machine or its value. The motion was refused and the case submitted to the jury, the Court instructing them, however, that no punitive damages would be allowed.

The plaintiff's exceptions charge the trial Court with error in numerous particulars. The assignments of error may be stated under four general heads: (1) In the admission of certain testimony over plaintiff's objection; (2) in refusing to grant plaintiff's motion for a directed verdict; (3) in giving certain instructions to the jury, and (4) in refusing to grant a new trial.

I. (a) The appellant complains, under its first assignment of error, that the Court allowed certain witnesses of the respondent to testify, over its objection, to alleged oral statements made by the seller's salesman, Carter, before the execution of the written contract, with reference to the machine he was selling, namely, that it was ball-bearing throughout. Several grounds or reasons are advanced why the admission of this testimony was error, among them being that the contract itself provided "that a retention of the property forwarded, after thirty days from its arrival at destination, shall constitute a trial and acceptance (and) be a conclusive admission of the truth of all representations made by or for the consignor, and a fulfillment of all its contracts of warranty, express or implied," and that, as the testimony conclusively shows the machine to have been retained by the respondent for a period of more than 30 days, any statements made by the appellant's salesman before the execution of the written contract were inadmissible.

Before the contract was executed the following words were inserted in pencil as part of same: "No money paid until machine demonstrated and accepted by B. L. Mims

Lbr. Co." We shall hereinafter refer to this clause of the contract as the "written provision"; the 30-day retention clause above-quoted being a part of the seller's printed form of contract.

The contention of the respondent is that the 30-day retention is inoperative, for the reasons that the written provision had the effect of nullifying it, and that during the first 30 days, although the machine was on the premises of the respondent, the appellant waived its rights, if any it had, under that clause by having a man spend most of that time in trying to demonstrate the machine.

It appears to us, from a careful study of the testimony, that there is no question that the purchaser retained the machine for more than 30 days after its arrival at Allendale and made no offer to return it to the seller. This being true, if the 30-day retention clause is given force and effect, as the appellant contends it should be, the purchaser must be held to have tried and accepted the machine, whether such trial and acceptance were actually made by him or not, and to have admitted the truth of all representations made by or for the consignor and complete fulfillment of the contract on the part of the seller. In the absence of the written provision in the contract, there can be no doubt that this would be the effect of the 30-day retention clause. The question, then, is what effect, if any, does the written provision have upon that clause?

The appellant contends that the only effect of the written provision was to relieve the purchaser from all obligation to make any payment before the machine was accepted, and that the 30-day retention clause "provides or defines what shall constitute an acceptance"; that Mims was not to pay any money until he accepted the machine, but that his retention of it for 30 days after its arrival at Allendale constituted an acceptance. By this reasoning appellant undertakes to show that these two provisions of the contract in no way conflict with or contradict each other.

The trouble with this reasoning is that the appellant ■ omits entirely to consider the word "demonstrated" appearing in the written provision or to give to that word any effect whatever. The rule of construction is that every word of a contract should be given meaning and effect if possible, and it seems to us that, in the light of the circumstances, the use of the word "demonstrated" in the present contract is not without significance.

The seller's printed form of contract contained no ■ provision for demonstration of the machine. It did provide, however, that, if the purchaser kept the machine for a period of more than 30 days after it reached its destination, such retention would be deemed an acceptance. The written provision stipulated that no money should be paid until the machine was both *demonstrated and accepted*. The word "demonstrate," when used as here in connection with machinery, ordinarily means to show or prove by operation of the machine its special value or merits with a view to its introduction or sale (see Webster).

The demonstration of the machine provided for in the contract was, of course, an actual and physical demonstration. This is the usual connotation of the word, and there is nothing in the contract suggesting constructive demonstration, though through the 30-day retention clause, if operative, constructive acceptance was contemplated. That such actual demonstration was contemplated, and that it should be satisfactory to the purchaser, is clearly indicated also by letters of the plaintiff to the defendant. On January 29, the plaintiff wrote the defendant: "After the machine has been installed and demonstrated to your satisfaction we will be pleased to receive your check for $1,294.00 covering the cash payment on this order."

And again on February 21: "After our Mr. Hotopp has demonstrated the No. 666 Planer and Matcher to your entire satisfaction, we would be pleased to have you give him your check for the first cash payment of $1,294.00 which, accord-

ing to terms, was to be made on demonstration of the machine."

■ We think there can be no doubt, from the language of the written provision, that satisfactory demonstration was to precede acceptance. No time limit for the demonstration was fixed—so far as the contract was concerned it need not be made within 30 days. How then could there be a constructive acceptance through retention of the machine for more than 30 days after its arrival, in case demonstration should not be completed within that time?

■ The conclusion is inescapable that under the contract the sale was not to be considered as consummated until the machine was demonstrated and accepted by the purchaser—of course, acceptance might be indicated by word or by course of action. Any other construction of the contract would deprive the purchaser of the substantial right, given him by the written provision, to have the machine demonstrated before acceptance, and would result in nullifying this provision and defeating the purpose for which it was inserted in the contract. It follows that the written provision is in conflict with the printed 30-day retention clause, and, under the rule of construction, must prevail.

This objection to the admission of the testimony cannot be sustained.

■ The appellant contends that this testimony was inadmissible for the reason also that it related to statements made prior to the execution of the written contract and had the effect of varying its terms.

It is elementary that parol testimony is inadmissible to vary the terms of a written instrument. *Gladden v. Keistler,* 141 S. C., 524, 140 S. E., 161. And the rule extends to negotiations leading up to the execution of the instrument. *Bruce v. Moon,* 57 S. C., 60, 35 S. E., 415; *Colvin v. Oil Co.,* 66 S. C., 61, 44 S. E., 380. But the testimony here objected to did not have that effect. There was evidence tending to show that the appellant manufactured, stocked, and sold

two kinds of No. 666 planing and matching machine, one ball-bearing and the other babbitt-bearing, each of which would have met the description in the contract of the machine sold to the respondent. This evidence, if believed and accepted by the jury, created a latent ambiguity, and parol testimony was admissible for the purpose of removing any such ambiguity by determining which of the two machines was sold to the respondent, that is, for the purpose of applying the words of the contract to its subject. The rule is well stated in *Wallace v. McCollough*, 1 Rich. Eq., 426: "When two things are proved to exist, each satisfying the description given in the paper, an ambiguity, previously latent, is created, which of them is intended. Here, alone, is parol evidence receivable to aid the Court in making a selection between them. But even here, it will be observed, though the evidence is received of necessity to give operation to the deed or will, it is to give it an operation conformable to its terms. It is not to explain the construction, and of consequence, the meaning of the terms employed in it, much less to vary them; but simply to enable the Court to apply them in exact conformity to the meaning and intent of the party, to be gathered from the paper by construction."

It will be observed that even under these circumstances the terms appearing in the contract cannot be varied by parol testimony, but the evidence is received, as said in the *Wallace case,* to give to the contract "an operation conformable to its terms." See, also, *Soloman v. Evans,* 3 McCord, 274; *Milling v. Crankfield,* 1 McCord, 258; *Elfe v. Gadsden,* 2 Rich., 373; *Bulow v. Goddard,* 1 Nott & McC., 45, 9 Am. Dec., 663; *Maryland Casualty Co. v. Gaffney Manufacturing Co.,* 93 S. C., 406, 76 S. E., 1089.

(b) Error is also imputed to the trial Judge in the admission of the testimony of the respondent's witness Beam as to certain alleged statements made by appellant's salesman, Carter, with reference to the power of the engine owned by Mims at the time the new machine was

contracted for. The objection at the trial to the admission of this testimony was on the ground that any representations about respondent's engine not embodied in the contract could not be binding on the appellant. No such ground, however, is presented to this Court for consideration. The only specification of error is that, if Carter made the representations about the engine imputed to him, he could not thereby bind the appellant, as such representations were beyond the scope of his agency. As this ground of objection is made for the first time by exception here and was not passed upon below, it will not be considered by this Court. *White v. Railway Co.*, 142 S. C., 284, 140 S. E., 560, 57 A. L. R., 634.

(c) By its third exception, appellant complains that the Court erred in admitting testimony of respondent's witness, Reynolds, as to statements made and advice given to Mims by appellant's expert, Hotopp, when he was in Allendale to demonstrate the machine sold respondent, with reference to the purchase of a new engine by Mims to run the planer, the error being that this testimony was incompetent, because (1) any such alleged statements made by Hotopp were without the scope of his authority, and (2) such statements were not a part of the *res gestæ*.

The respondent, in order to show that the alleged statements were made by Hotopp within the scope of his agency, relies on a letter of introduction from the appellant delivered to the respondent by Hotopp when he reached Allendale for the purpose of demonstrating the machine; the letter stating that Hotopp was to "instruct your operators as to how to secure the best results from it (the machine)."

It is contended that the advice, alleged to have been given by Hotopp to Mims, that it was necessary for him to buy a larger engine to run the machine, comes within the scope of his authority as set out in the language above quoted, but we do not agree with this contention. It seems to us that this statement merely means that Hotopp was to instruct the laborers whom Mims would furnish for operating the

machine sold to him as to "how to secure the best results from it," and did not contemplate advice or instructions from Hotopp to Mims as to the sort of engine necessary for Mims to purchase in order "to secure the best results." The admission of this testimony was prejudicial to the appellant, and the exception raising the question must be sustained.

(d) By its fourth exception, appellant complains of the admission of testimony of the respondent's witness Beam as to alleged statements made by Hotopp while demonstrating the machine at Allendale, to the effect that the machine was not put together right in the factory, never tightened up, etc., upon the ground, among others, that this testimony was incompetent and irrelevant, because, under the theory upon which the case was tried and submitted to the jury, the sole question was whether the machine delivered was substantially that bought, and there was no issue as to defects in such machine.

This point is well taken. The testimony was irrelevant, and, under all the facts disclosed in the trial of the case, was prejudicial to the appellant.

(e) The exception to the admission of the telegrams dated March 6, 1925, and March 16, 1925, from the respondent to appellant, cannot be sustained.

As we have already shown, Mims was not required under the terms of the contract to accept the machine until it had been satisfactorily demonstrated. The telegrams were admissible for the purpose of showing that he notified the appellant on the dates of the telegrams that the machine was not being demonstrated to his satisfaction.

(f) Error is also imputed to the trial Judge in the admission of the testimony of the witness Estes, to the effect that the appellant had retained the old planer which Mims had shipped it, on the ground that such testimony was irrelevant and prejudicial, as it could not properly be considered by the jury in the assessment of any damages against the plaintiff.

As similar testimony had already been admitted without objection, the exception raising this question cannot be sustained. *McGown v. Muldrow,* 91 S. C., 523, 74 S. E., 386, Ann. Cas., 1914-A, 139.

(g) The appellant further complains that the Court erred in admitting the testimony of J. P. Mims, to the effect that respondent had on his mill yard, in June, 1925, over 300,000 feet of air-dried lumber. At the trial of the case appellant objected to the admission of this testimony, on the ground that, according to the testimony of defendant's own witnesses, the dry kiln could not take off all the lumber the mill would cut, and lumber naturally accumulated on the yard for that reason. The testimony was admitted over this objection. The appellant now excepts to its admission on the ground that it was irrelevant, there being no showing as to when the lumber was placed on the yard, and that it referred to air-dried lumber on the yard three months after the issues were joined.

The objection here made was not made on trial of the case and not passed on by the Court below, and cannot be considered by this Court. *White v. Railway, supra.*

(h) The appellant finally complains that the trial Judge erred in admitting certain testimony of the witness Reynolds, "relative to the amount of profit made by B. L. Mims Lumber Company during a portion of the months of December, 1924, January, 1925, and February, 1925, and the amount of damages suffered by said B. L. Mims Lumber Company during the months of February, March, April and May, 1925," upon the grounds (1) that profits of this nature could not be recovered in this action; (2) that ordinary profits of a going manufacturing concern cannot be recovered, and (3) that all such profits were purely speculative.

The contention of the appellant is that, while the trial Judge held "ordinary profits could not be recovered," he admitted the testimony objected to; that this testimony was

the basis for the principal item of damages, was argued to the jury very strenuously by the attorneys for Mims, and was prejudicial to the appellant; that the true and correct measure of damages in a case of this kind is the rental value of the specific property of which the complainant has been wrongfully deprived; that the profits undertaken to be proved in the present case, those of a going manufacturing concern, are too uncertain to form a basis for an award for damages for breach of contract affecting the operation of the plant; and that, when the correct principles of law are applied to the facts of the case, it is seen that the profits attempted to be shown by this testimony were altogether speculative and uncertain.

Respondent contends that the true and correct measure of damages in a case of this kind is the value of the use to the owner of his manufacturing plant, "to be ascertained by inquiry into its past results; and the most important factors in such past results would be the usual profits earned"; that the purpose of the admission of the testimony was not to prove the profits in order that profits, *eo nomine,* might be recovered, but to put before the jury "the usual profits earned" in order that the value of the use of the property to the owner might be ascertained; and that for these reasons the testimony was admissible.

In *Sitton v. MacDonald,* 25 S. C., 68, 60 Am. Rep., 484, the Court said:

"The rule as to the proper measure of damages is not always free from difficulty. It is not the same under all circumstances, but necessarily varies to meet the varying cases as they arise. It is different in actions *ex contractu* from those in tort. In the former it is more restricted, the fundamental principle being that the damage must be 'the primary and immediate result of the breach of contract.' Wood's Mayne 'Dam., Sec. 12; *Tappan & Noble v. Harwood,* 2 Speers, 536; *D'Orval v. Hunt,* Dud., 180. In this latter well-considered case it was held that 'for the breach of an ex-

ecutory contract, without fraud or imposition, the jury can only give such damages as fairly and naturally result from it, and which can be measured by a pecuniary standard; remote and consequential damages cannot be allowed.'

"This is undoubtedly the rule, but it is not always easy to fix the exact limit between what is primary and secondary, or what is immediate or consequential and remote. If the breach is merely in the tardy delivery of property intended for sale, it is obvious enough that ordinarily the damage would be the difference in the price realized from that which might have been obtained at the proper time. But if the breach is in the non-delivery of an article not intended for sale, but for use in some particular business, other considerations intervene, and the matter is not so clear. In this class of cases the Courts have endeavored to lay down certain rules to assist in fixing the damages upon proper principles. In *Hadley v. Baxendale* (9 Exch., 341), which seems to have been considered a leading case both in England and America, the following rules are indicated: 'First, that damages which may fairly and reasonably be considered as naturally arising from a breach of contract, according to the usual course of things, are always recoverable. Second, that damages which would not arise in the usual course of things from a breach of contract, but which do arise from circumstances peculiar to the special case, are not recoverable, unless the special circumstances are known to the person who has broken the contract.' See Wood's Mayne Dam., Sec. 14, and notes."

In the *Standard Supply Co. v. Carter & Harris,* 81 S. C., 181, 62 S. E., 150, 19 L. R. A. (N. S.), 155, the defendants, who were merchants, had installed a cotton ginnery, to make a direct profit from ginning cotton, and also to facilitate collections through the consequent acquiring of the first opportunity to purchase the cotton and cotton seed of their debtors. In April, 1906, the plaintiffs contracted to deliver to the defendants, on or before August 1, 1906, a

Clarke engine intended to furnish power for defendants' ginnery for the season of that year, which began about the middle of August. The plaintiff did not deliver the engine until about September 26, 1906, although informed that injury would result to defendants' business from any delay in delivery. An action was brought by the plaintiff for the sum of $317.20, which was the price of a lot of roofing and the engine sold the defendants. A counterclaim was set up by the defendants for damages in the sum of $1,995 for breach of contract of sale. A demurrer to the answer was overruled by the Circuit Court and an appeal was taken therefrom. This Court, in considering whether or not the allegations of the counterclaim stated a cause of action for damages, said: .

"The Circuit Judge was undoubtedly right in holding the allegations of the counterclaim stated a cause of action for the rental value of the ginnery plant, for the period that the plaintiff's delay in the delivery of the engine kept it idle.

"It is true, as plaintiff contends, defendants cannot recover remote, contingent, or speculative damages, based on profits they hoped to make. *Tappan & Noble v. Harwood,* 2 Speers, 551; *Sitton v. MacDonald,* 25 S. C., 68, 60 Am. Rep., 484; *Mood v. Tel. Co.,* 40 S. C., 524, 19 S. E., 67; *Colvin v. [McCormick Cotton Oil Co.] Oil Mill,* 66 S. C., 61, 44 S. E., 380; *Hays v. Tel. Co.,* 70 S. C., 16, 48 S. E., 608, 67 L. R. A., 481, 106 Am. St. Rep., 73 [3 Ann. Cas., 424]; *Howard v. Stillwell Co.,* 139 U. S., 199, 11 S. Ct., 500, 35 L. Ed., 147. But if the defendant proves his allegations that the operation of the ginnery depended on plaintiff's delivery of the engine at the time agreed on, that this was fully explained to plaintiff when the contract was made, and that the failure of the plaintiff to comply with its contract prevented the operation of the ginnery, then there cannot be a doubt of the liability of the plaintiff for the direct damages which resulted from the ginnery plant being idle.

These damages would be the value of the use of the plant for the period of inactivity due to plaintiff's delay in delivering the engine. The general rule, well supported by authority and the fairest that could be adopted, is that damages for the wrongful deprivation of the use of specific property are to be measured by its rental value."

But the Court went on to say: "There is a manifest difference between the interruption of an established manufacturing plan or other business, such as a cotton mill or flour mill, in successful operation, and the prevention of the establishment of a new business. It would, in most cases of the former kind, be exceedingly unjust to limit the award of damages to what the business would rent for, because there would ordinarily be no demand for the temporary use of the business which would express, even approximately, its value to the owner. The measure, then, must be the value of its use to the owner to be ascertained by inquiry into its past results, and the most important factors in ascertaining such past results would be the usual profits earned."

After careful consideration of the questions raised by this exception, we think that this case, involving the interruption of the operation of an established manufacturing lumber plant, comes within that class of cases where the award of damages, if any, is not limited to the rental value of the plant for the time of such interruption, but where the correct measure of damages is the value of the use of the plant to its owner; and to determine such value it is necessary to inquire into its past results, in the ascertainment of which the usual profits earned constitute the most important factor. Testimony, therefore, was admissible to prove the average profits of the business earned for a reasonable period prior to the alleged breach of the contracts, and the lack of profits after such breach during such period of time as would be reasonably necessary for the purchase and installation of other machinery.

The modern rule appears to be that profits should not be excluded as an element in the recovery of damages merely because they are profits, but that the proper reason for excluding them in any case is that they are too remote, or are speculative or are not shown with sufficient certainty (17 C. J., 785) ; but when they are allowed "there must be reasonable proof of their amount, and for this purpose, actual past profits and receipts in the particular business or undertaking, where not too remote from the injury or wrong complained of, and although they may vary from time to time, may be shown, although they cannot be taken as an exact measure of future profits; and the various contingencies by which they would probably be affected should be considered and given such weight as they are entitled to in the sound discretion of the jury." 17 C. J., 910.

And even if it should be held that the damages here contemplated are not such as would reasonably be expected to arise from a breach of contract in the usual course of things, the appellant, under the facts of this case, could scarcely complain of the admission of this testimony on that ground, for the reason that it manifestly knew, having accepted and received the old planer as part payment for the new one, that there would result from the entire transaction an interruption to respondent's business, from which, if the new machine should not do its work, damages to respondent might arise.

II. Appellant's motion for a directed verdict for the machine or its value was made on the grounds that the respondent had retained possession of the planer for more than 30 days after its arrival at Allendale; that such retention, under the terms of the contract, constituted a trial and acceptance and an acknowledgment that the contract was completely fulfilled on the part of the appellant; and that the respondent had failed to make payment as provided in the contract. The motion was overruled, and the appellant brings error. What we have already said in construing the contract dis-

poses of the question here raised. There was no error in refusing the motion on the grounds stated.

III. The appellant also complains of certain instructions given to the jury; the grounds of objection being identical with those taken to the admission of certain testimony, and involving the construction of the contract and the rule as to the measure of damages. We have already decided these questions adversely to the appellant's contention, and the exception imputing error in giving such instructions is over-ruled.

IV. The appellant contends, lastly, that the presiding Judge erred in refusing its motion for a new trial. This motion was made upon numerous grounds, among them being the admission of certain testimony already considered in our disposition of the third and fourth exceptions and held to be error. A new trial should, therefore, have been granted upon the grounds stated in these exceptions and em-bodied in the motion for a new trial.

The third and fourth exceptions are sustained.

The judgment of the Circuit Court is reversed, and the case remanded for a new trial.

MR. CHIEF JUSTICE WATTS and MESSRS. JUSTICES COTH-RAN and BLEASE concur.

MR. JUSTICE COTHRAN: See, also, *Currie v. Davis,* 130 S. C., 408.

MR. JUSTICE CARTER (dissenting): Not being able to agree to the conclusion reached in the leading opinion, in sustaining the third and fourth exceptions, I most respect-fully dissent and shall, in a brief way, state my reasons therefor.

Under the third exception the appellant imputes error to the presiding Judge as follows: "That his Honor, the presiding Judge, erred in admitting, over the objection of the plaintiff, the testimony of the witness, Reynolds, relative to alleged statements made by Hotopp when he was in Allen-dale to demonstrate the machine, in reference to the pur-

chase of a new engine to run the machine; the error being that said testimony should not have been admitted because (a) any such alleged conversation or instructions were without the scope of Hotopp's authority; (b) said alleged conversations or instructions were not part of the *res gestæ* and were not made in connection with demonstration of the machine by Hotopp."

As I view the issues involved the testimony in question was competent and the exception should be overruled. Pursuant to a provision of the contract, Mr. Hotopp, a representative of the plaintiff, was sent by the plaintiff to Allendale to demonstrate for the defendant the machine in question. It clearly appears from the testimony of the defendant's witnesses, and also from the testimony of this Mr. Hotopp, who testified for the plaintiff, that Mr. Hotopp met with considerable difficulty in getting the machine to do the work for which it was sold, and while in the discharge of his duty in demonstrating the machine ordered certain pieces for the machine, which were used by him on the machine. The particular testimony objected to by the plaintiff was to the effect that Mr. Hotopp while trying to demonstrate the machine told the defendant that he needed another engine with which to operate the machine and instructed the defendant to get another engine, and that the defendant acting upon the instructions procured another engine. In my opinion, if Mr. Hotopp, acting in the capacity for which he was sent, thought it was necessary to have another engine in order to get the machine to operate successfully, it was his duty to inform the defendant of such fact, and it was proper for the jury to have this information. While Mr. Hotopp, who testified for the plaintiff, in the course of his testimony denied having instructed the defendant to get another engine, what he testified to in my opinion amounted to about the same thing. On the direct examination of this witness by counsel for the plaintiff he testified on this phase of the case as follows:

"Q. Now, Mr. Hotopp, when you first got there, state whether or not they had power enough to run that planer? A. Well, they did not have enough power, and Mr. Jim Mims, I think, the first day I was there, and he asked me, what you think of that engine over there, and he said, you think we are going to have enough power? And I said I do not know, and you see it was shut down, and that was the time we had the broken sprocket, and he said, I got one in line, and he said, I think I am going to get hold of 100 horse power engine, and I said that would be better than this one. I am no engine expert, I know nothing about engines.

"Q. And it was not at your suggestion that he got that engine? A. No, sir, I could make no suggestion about buying any engine.

"Q. You do not know anything about it? A. No, sir."

On the cross examination Mr. Hotopp stated:

"Q. He bought another engine? A. Yes, sir, he did.

"Q. And you swear you never advised him to buy it? A. I advised him to get more power.

"Q. What was he going to do with the other engine? A. I told him that the other engine did not have enough power."

To my mind what the representative of the plaintiff admitted saying was tantamount to advising the defendant to get another engine; that the machine could not be successfully operated without an engine with more power than the one then in use. Having been sent there to demonstrate the machine it was expected of Mr. Hotopp to give such information and advice as would aid the operation of the machine, and, in my opinion, the jury was entitled to know these facts.

Under the fourth exception the appellant imputes error to the presiding Judge in admitting, over the objection of the plaintiff, the testimony of the witness, Beam, with reference to the alleged statements made by Mr. Hotopp, when he was at Allendale as the representative of the plaintiff to demonstrate the machine in question, in reference to the condition of the machine.

Having been sent to Allendale as the representative of the plaintiff to demonstrate the machine in question, it is hard to conceive of how Mr. Hotopp could be expected to work for several weeks on the machine for the purpose of demonstrating it, order and put on new parts or attachments, as the evidence shows was done, and yet not expected to give any expression as to the condition of the machine. Furthermore, in demonstrating and working upon the machine for the period of time stated, Mr. Hotopp, perhaps, had a better opportunity as a mechanic to ascertain and point out the defects of the machine, if any existed, than the mechanics in the shop where the machine was built, and as a representative of the manufacturer, the plaintiff herein, his statements as to the condition of the machine, based on information acquired while working on the machine and trying to demonstrate it, and made while in the discharge on such duty, should, in my opinion, be admitted in evidence.

Furthermore, if the admission of the testimony complained of under this, the fourth exception, be held to be error, it was harmless error, for the reason that the testimony in question related to admissions as to defects in the machine in question, and the presiding Judge did not submit that issue to the jury; but the issue submitted, as announced by the Judge, was whether or not the machine delivered was the machine ordered; and there was no motion to strike out this alleged inadmissible testimony. In my opinion the appellant has no ground to complain, and I think the exceptions should be overruled.

I am in accord with the conclusion reached in the leading opinion in overruling the other exceptions.

I, therefore, think the judgment of this Court should be that the judgment of the Circuit Court be affirmed.