15642

GEORGETOWS TOWING COMPANY v. NATIONAL SUPPLY CO.

(29 S. E. (2d), 765)

April, 1943.

*Mr. Sylvan L. Rosen,* of Georgetown, S. C., Counsel for Appellant,

*Mr. Huger Sinkler,* of Charleston, S. C., Counsel for Respondent,

April 14, 1944.

Mr. Associate Justice Fishburne delivered the Unanimous Opinion of the Court:

On April 4, 1940, the plaintiff purchased from The National Supply Company a Ninety-Horsepower Marine Engine, under a written contract of sale, for the sum of $3,720.77. It is alleged that the contract required the defendant to furnish a competent mechanic to superintend the installation of the engine in the plaintiff's tugboat, the *Jeannette*; that the installation was done incorrectly, in that the expert furnished by the defendant improperly located the oil gauge so that it failed to register oil pressure. The engine functioned satisfactorily until the month of February, 1942, when it broke down. Upon investigation it was discovered that the bearings and crankshaft had been burned out, due to the failure of oil to reach them, which defection was not registered by the oil gauge. Damages were sought because of the alleged failure to properly install the engine.

The defendant denied liability under the contract, and further defended upon the ground that the terms of its warranty excepted it from damages after one year from the date of the contract of sale. Upon trial the defendant moved for a nonsuit; and at the conclusion of all of the testimony, for the direction of a verdict in its favor. The plaintiff likewise moved for the direction of a verdict. This motion was granted, as the result of which the only question submitted to the jury was the amount of damages sustained. The jury awarded damages for the plaintiff in the sum of $1,691.79.

It is from the refusal of the lower Court to grant appellant's motion for a nonsuit that this appeal is taken. Exception is also made to a portion of the instructions given to the jury.

The appellant based its motion for a nonsuit upon the ground that the written contract of sale entered into between the parties contained an express warranty, which, it is argued, excluded the implied warranty of proper installation upon which the action is founded. The written contract contains the following warranty:

"The machinery herein specified is guaranteed by Seller to be of good material and well made in a workmanlike manner. If any parts of said machinery fail through defect of workmanship or material within one year from date of shipment thereof, the Seller will replace such defective parts free of charge f. o. b. cars its factory, but the Seller will not be liable for repairs or alterations unless the same are made with its written consent and approval. The Seller will not be liable for damages or delays caused by such defective material or workmanship, and it is agreed that its liability under all guaranties is expressly limited to the replacing of parts failing through defect in workmanship or material, free of charge, f. o. b. its factory, within the time and in the manner aforesaid. Parts claimed to be defective are to be returned to Seller, at its option, transportation prepaid. The Seller makes no guarantee whatever in respect to reverse gears, propeller wheels, starting apparatus, or material other than that manufactured by the Seller, as they are sold under the regular warranty of their respective manufacturers, a copy of which will be furnished if requested."

The contract also contains this provision:

"Buyer shall furnish all labor (and material other than specified herein) necessary to erect said engine and equipment promptly under superintendency of competent man furnished by Seller."

It is the contention of the respondent that under the foregoing provision, the appellant not only contracted to furnish a competent man to superintend the installation of the engine, but that there is implied from the sales contract by operation of law a warranty that the installation would be

properly done and performed. It is urged by appellant that the sole obligation or responsibility of the seller under its contract was to provide a competent man to superintend the erection of the engine, but that it did not by virtue of its agreement assume any responsibility for proper installation or mistakes made by the superintendent it furnished. In brief, it is argued that no implied warranty arises under the contract to properly install the engine.

The lower Court took the view that an implied warranty was created by operation of law, from the nature and circumstances of the case, and was not excluded by the express warranty.

We have held in numerous cases that for an express warranty to preclude an implied warranty, both must relate to the same or a closely allied subject. *Black v. B. B. Kirkland Seed Co.,* 158 S. C., 112, 155 S. E., 268; *Trimmier v. Thomson,* 10 S. C., 164; *Wood v. Ashe,* 3 Strob., 64, 34 S. C. L., 64; *Banks v. Hughes,* 1 McCord, 537, 12 S. C. L., 537; *Wells v. Spears,* 1 McCord, 421, 12 S. C. L., 421; *Houston v. Gilbert,* 3 Brev., 63, 5 S. C. L., 63, 5 Am. Dec., 542.

The foregoing cases clearly hold that an express warranty of a chattel as to a particular matter or matters, does not exclude an implied warranty as to another and wholly different matter.

By reference to the express warranty, the appellant obligated itself as follows:

(1) That the machinery is of good material and well made in a workmanlike manner;

(2) If any parts fail through defective workmanship or material within one year, such defective parts will be replaced; but

(3) The Seller will not be liable for damages or delays caused by such defective material or workmanship (in the engine)—its liability for all of these guarantees being limited to replacing the parts;

(4) There is 'no guarantee whatsoever to certain parts and apparatus not manufactured by the Seller, as they are sold under the warranty of their respective manufacturers.

In Article 8 of the contract, it is provided that the Seller shall not be responsible for damages arising out of the use of the machinery and materials.

It is thus seen that the express warranty relates to the engine and to its normal use. Nothing is said in the written contract styled "Guaranty", with respect to the competent man to superintend the installation of the engine. This obligation appears in another portion of the contract.

The question for decision then is: Does the express warranty covering the engine and its parts preclude the implied warranty that the competent man to be furnished by the Seller would install the engine properly?

In our opinion, the express warranty relating to the machinery and its workmanship is not incompatible with the implied warranty that the engine would be installed by the Seller on the tugboat in a proper manner. The limitation of damages with reference to the normal operation and use of the machinery is quite a different matter from the implied obligation to properly superintend the installation of the engine. The two things are dissimilar and have little if any relation to each other.

In *Smith v. Russ Mfg. Co.,* 167 S. C., 464, 166 S. E., 607, 610, which appears to be the latest case on this subject, it was held that an implied warranty of title in the sale of a soda fountain was not precluded by the fact that the contract of sale contained the following express warranty:

"Seller warrants that this equipment will be free from defect in material and workmanship under normal use and services, but that obligation under this warranty is limited to making good at its factory any part or parts thereof which shall, within twelve months after delivery of said equipment, be returned to it with transportation charges prepaid, and which its examination shall disclose to have been defective,

as claimed, it being understood that the warranty is given in lieu of any and all warranties, expressed or implied, and all other obligations on the manufacturer's part."

The contract of sale in the above case also contained a provision similar to that appearing in the contract under discussion, viz.: That the contract covered the entire matter of negotiations between the buyer and the seller, and all agreements of the parties.

The only reasonable inference to be drawn from the plaintiff's testimony was that the engine was improperly installed, and that it was due to this improper installation that damages resulted. In our opinion, the motion for a nonsuit was properly overruled.

No appeal is taken by appellant from the action of the trial Judge in overruling its motion for a directed verdict, nor from the order directing a verdict in favor of the respondent. This latter motion was granted upon the ground that the damages suffered by the respondent resulted from the improper installation of the engine. Following this ruling, the trial Judge held that the only matter to be submitted to the jury was the amount of damages sustained.

The second ground of appeal arises from the refusal of the trial Judge to instruct the jury that they should take into consideration the circumstances responsible for appellant's delay in repairing the damage to the engine. It is contended that this instruction should have been given in mitigation of damages.

Due to the faulty installation of the engine, the bearings were burned out on February 20, 1942. The appellant was immediately notified, and by agreement with the plaintiff undertook to replace the necessary parts, and to furnish the labor for the repairs. This repair work was completed on May 7, 1942, at a cost to the respondent of $779.18. The appellant contends that it was delayed in rehabilitating the engine under this subsequent agreement by reason of matters beyond its control. It is argued that regulations issued

by the Office of Price Administration dealing with priorities, delayed it in obtaining the necessary parts, and that these regulations were not in force at the time that the contract of sale was entered into.

In a case of this kind, the buyer may recover, in addition to general damages, any special or consequential damages which he may have suffered by reason of breach of warranty, and which are the natural and direct or proximate result of the breach, and may reasonably be considered as within the contemplation of the parties at the time the contract was made. *Liquid Carbonic Co. v. Coclin*, 166 S. C., 400, 164 S. E., 895; *Fay & Egan Co. v. Mims*, 151 S. C., 484, 149 S. E., 246.

The respondent alleged and proved that the engine was purchased to enable it to tow steel barges of pulpwood up and down the Santee River, and that this fact was known to appellant when the contract was entered into. These special circumstances were, therefore, within the knowledge and contemplation of the parties when the contract was executed. The damages suffered by the respondent due to loss of business during the time the *Jeannette* was laid up for repairs is not questioned, except that it is contended that the amount should be reduced because of the unforeseen difficulty encountered by appellant in obtaining new parts.

With reference to the installation, the appellant occupied the position of an expert in determining what was necessary to be done. The respondent did not profess any expert knowledge as to the engine, and relied entirely upon the appellant as to what was required. And it is entirely clear that the damages to the engine caused by the faulty placing of the oil gauge were in no wise due to any defect in the machinery or any of its component parts.

The trial Judge held that the question of priorities under regulations issued by the Office of Price Administration sub-

sequent to the execution of the sale contract, would not avail the appellant upon the theory upon which the case was brought. The action was not brought for any defect in the engine or any of its parts under the express warranty contained in the contract. It was based upon the failure of appellant to properly install the engine in the first instance; and such damages as were sustained stemmed directly from this original default. The delay encountered in obtaining parts when it undertook to repair the engine ·under its second agreement, was purely a secondary consequence which should not militate against respondent. The same delay would have occurred if the respondent had contracted with any other manufacturing concern to replace the parts.

In our opinion, the lower Court would not have been justified in allowing the jury to consider as mitigating circumstances the incidental difficulty which subsequently arose in obtaining new parts with which to make the engine whole.

Judgment affirmed.

MR. CHIEF JUSTICE BAKER and MESSRS. ASSOCIATE JUSTICES STUKES, TAYLOR and OXNER concur.