## 17205

W. L. CANNON, Respondent, v. PULLIAM MOTOR COMPANY, WILSON MOTOR COMPANY and FORD MOTOR COMPANY, Appellants

(94 S. E. (2d) 897)

132

*Messrs. Robinson, McFadden & Dreher* and *T. Pou Taylor,* of Columbia, *for Appellants,*

*Messrs. C. T. Graydon* and *Augustus T. Graydon,* of Columbia, *for Respondent,*

September 20, 1956.

OXNER, Justice.

This is an action against the dealer and manufacturer to recover damages for alleged breach of an automobile war-

ranty. The trial resulted in a verdict for plaintiff against both defendants in the amount of $1,500.00. The trial Judge concluded that the verdict was excessive and granted a new trial unless plaintiff remitted on the record $500.00 of the verdict. This was done and judgment entered for $1,000.00.

The questions for determination are: (1) Did the trial Judge err in refusing a motion by defendants for a directed verdict? (2) Are the defendants entitled to a new trial because of errors in the charge? (3) Did the trial Judge err in refusing to reduce the verdict below $1,000.00?

On February 10, 1953, respondent, W. L. Cannon, purchased a new 1953 Ford automobile from appellant Pulliam Motor Company, then Wilson Motor Company, an authorized Ford dealer in Columbia. The total purchase price, with extras, was $2,460.78. The buyer was allowed $780.78 for a 1947 Pontiac automobile and paid the difference of $1,680.00 in cash. Along with the new car he received the usual Ford Motor Company warranty, the pertinent portion of which is as follows:

"The Ford Motor Company warrants all such parts of new Ford automobiles, trucks and chassis, except tires, for a period of ninety (90) days from the date of original delivery to the purchaser of each new Ford vehicle or before such vehicle has been driven 4,000 miles, whichever event shall first occur, as shall, under normal use and service, appear to it to have been defective in workmanship or material. This warranty shall be limited to shipment, to the purchaser without charge, except for transportation, of the part or parts intended to replace those acknowledged by the Ford Motor Company to be defective. * * * This warranty is expressly in lieu of all other warranties expressed or implied and all other obligations or liabilities on the part of the Ford Motor Company. * * *."

In the contract of sale signed by the purchaser and dealer, the following appears:

"It is agreed and understood that no warranties of any kind or character, either expressed or implied, are made by you of and concerning the car to be delivered to me, other than the usual manufacturer's warranties."

Trouble developed almost immediately after respondent purchased the automobile. He says that it would "buck, slip, and jump", and there was "a terrible noise in the engine." Within less than a week the car was taken back to the dealer and left for a day. Respondent noticed no improvement. He continued to take the car back to the service department of the dealer. He says he did so about twice a week for a period of several months but the trouble was not remedied. During the latter part of March, he also took the car to two independent mechanics who told him there was considerable vibration in the motor but since the warranty period had not expired, the car should be taken back to the dealer. Finally, a Ford representative came to Columbia and after examining the car remarked, according to respondent, that "there is something terribly wrong with your motor", and that he would have to tear it down and replace the parts causing the noise. Respondent refused to permit this, stating that he did not want a rebuilt or reconditioned motor and suggested that a new one be installed. The dealer refused to do so.

Sometime later the dealer offered respondent a new car upon the payment of $150.00. Respondent declined this offer, explaining that it would involve a loss of more than $300.00 since he had placed additional accessories on his car costing around $168.00. The parties being unable to adjust their differences, respondent in September, 1953, traded this Ford automobile for an Oldsmobile and was allowed $2,236.00 on the trade.

It seems to be conceded that there was some vibration in the motor. Two of the dealer's mechanics said that this was common to all motors of this model. One of them testified as follows:

"Q. Now, you say that all these models had that rattle or roaring in them? A. They had some type of vibration or roar, or whatever you want to call it.

"Q. The whole output of 1953 had that roaring in them? A. Yes, sir."

Prior to respondent's trading the car, the dealer, in an effort to remedy the defects, replaced the water pump, driving shaft, bumper guard, distributor diaphragm, pilot bearing, timing gear and pressure plate, and also repaired the carburetor.

There was testimony on the part of appellants that their mechanics could probably have remedied the trouble if they had been permitted to disassemble the engine and replace any defective parts, but respondent refused to permit this.

We shall first consider the exception made by appellant Pulliam Motor Company alone to the effect that it is not liable on the Ford warranty. This exception is overruled. Under the clause in the contract of sale heretofore quoted, the Pulliam Motor Company adopted the Ford warranty as its own. *Livingston v. Reid-Hart Parr Co.,* 117 S. C. 391, 109 S. E. 106; *Morris v. Trinkle,* 91 Ind. App. 657, 170 N. E. 101; *Baker & McDowell Hardware Co. v. Ellis,* 149 Miss. 257, 115 So. 425.

We shall next consider the contention of both appellants that the Court should have granted their motion for a directed verdict upon the ground that there was no proof of a breach of the obligations assumed under the warranty. Ford says in its brief that its liability and also that of Pulliam, if the latter is bound by the warranty, is "restricted to the replacement, without cost, of the part or parts found to be defective in workmanship or materials", and that there is "no evidence that they failed or refused to replace any part or parts which were defective in material or workmanship, which was all that was required of them under the warranty."

There can be no doubt that the parties had a right to contract for a limited warranty. *Livingston v. Reid-Hart Parr Co., supra; Liquid Carbonic Co. v. Coclin,* 161 S. C. 40, 159 S. E. 461. It is equally clear that under the warranty here involved no liability arises until the warrantor, after having been given a reasonable opportunity to remedy the defects, fails or refuses to do so. 77 C. J. S., Sales, §§ 340 and 341; 46 Am. Jur., Sales, Section 732. But he "does not have an indefinite length of time within which to remedy the defect, and if, after reasonable time therefor, the chattel still fails to conform to the warranty, the buyer may resort to his ordinary remedies." 46 Am. Jur., Sales, Section 732, page 858. Stated differently, the buyer is not obligated to permit the warrantor to indefinitely tinker with the car in the hope that it might ultimately produce the desired result. *A. Baldwin Sales Co., Inc., v. Mitchell,* 174 La. 1098, 142 So. 700; *Becker Roofing Co. v. Carroll,* 37 Ala. App. 385, 69 So. (2d) 295.

It is true that the warranty here specifies that it is limited to the replacement of those parts "acknowledged by the Ford Motor Company to be defective." But the better view is that this language should not be construed as leaving the matter to the uncontrolled judgment of the warrantor but to include any defect which actually exists regardless of the warrantor's determination to the contrary. *C. V. Hill & Co., Inc., v. Weinberg,* 67 Ga. App. 44, 19 S. E. (2d) 430; *Mills v. Maxwell Motor Sales Corporation,* 105 Neb. 465, 181 N. W. 152, 154, 22 A. L. R. 130. In the last mentioned case the Court said that it would "be repugnant to every conception of justice to hold that, if the parts thus returned for examination were, in point of fact, so defective as to constitute a breach of warranty, the appellee's right of action could be defeated by the appellant's arbitrary refusal to recognize that fact." Accordingly, it has been held that "To ineffectually replace the defective parts, leaving the car still defective under normal use and service," is not a sufficient compliance with the warrantor's obligation. *Ford Motor Co. v. Cullum,* 5 Cir., 96 F. (2d) 1, 3.

We think the evidence clearly waranted submission to the jury of the question of whether there was a breach of warranty. The car was carried to the dealer twice a week for a period of several months. Although numerous parts were replaced, there is abundant evidence tending to show that the trouble was never remedied.

It is further argued that respondent is precluded from recovery because of his refusal to permit appellants to disassemble the engine so as to enable them to find and replace any defective parts. But this request was not made until after the dealer had failed over a period of several months to remedy the trouble. Moreover, the uncontradicted testimony of appellants' mechanics is that the engines in all 1953 Ford models had "some type of vibration or roar." Respondent was willing for appellants to install a new engine but stated that he did not want a reconditioned motor. We think under all the circumstances of the case it was a question of fact for the jury as to whether respondent, after appellants had made numerous unsuccessful efforts to repair the automobile, was unreasonable in refusing to permit them to disassemble the engine. *Studebaker Corporation v. Nail,* 82 Ga. App. 779, 62 S. E. (2d) 198.

Having concluded that the Court properly refused the motions for a directed verdict, we turn to the exceptions imputing errors in the charge.

The Court concluded that the warranty was ambiguous and left its construction to the jury. This was error. While there are circumstances under which the intentions of parties to a written contract may be left to the jury, *Wheeler v. Globe & Rutgers Fire Insurance Co.,* 125 S. C. 320, 118 S. E. 609; *Breedin v. Smith,* 126 S. C. 346, 120 S. E. 64; *Clowney v. Rivers,* 129 S. C. 58, 123 S. E. 759; 53 Am. Jur., Trial, Section 269, there is nothing here requiring departure from the general rule that the construction of written contracts belongs to the court and not

the jury. We find no ambiguity in this warranty. It should have been construed by the Court.

The Court further erred in charging the jury that ▮ they could take into consideration inconvenience as an element of damages. No case has been cited and we find none sustaining such an instruction in a case of this kind.

There are several other complaints as to the charge ▮ but we need not consider them. As there must be a new trial, we desire to state that if the respondent is entitled to recover, the proper measure of damages, under the facts of this case, is the difference between the actual value of the car in its defective condition at the time of sale and its value if it had been as warranted. This is the general rule as to the measure of damages for breach of warranty. *Liquid Carbonic Co. v. Coclin, supra,* 161 S. C. 40, 159 S. E. 461; *National Tire & Rubber Co. v. Hoover,* 128 S. C. 344, 122 S. E. 858. In the absence of special circumstances or special damages, this rule has been applied in actions for breach of warranty of a motor vehicle. Cyclopedia of Automobile Law and Practice, Blashfield, Volume 7, Section 4531; *Studebaker Corporation v. Nail, supra,* 82 Ga. App. 779, 62 S. E. (2d) 198; *Baker & McDowell Hardware Co. v. Ellis, supra,* 149 Miss. 257, 115 So. 425.

We find no circumstances here warranting the re- ▮ covery of special damages. It is alleged in the complaint that respondent "was put to large amounts of expense, loss of time, was put out of the use of his automobile, was forced to get other means of transportation during said period." Respondent testified that he expended around $40.00 in buying sparkplugs. Assuming that these constitute "parts" within the terms of the warranty, it is not shown that appellants refused to replace any defective sparkplugs. Respondent is a policeman and testified that he used this automobile in going to and from work. There is no evidence that he lost any time from his work or that he incurred any

expenses for transportation during the period he had this automobile.

Since there must be a new trial on account of errors in the charge, we need not pass upon the contention that the verdict was excessive.

Judgment reversed and case remanded for a new trial.

STUKES, C. J., and TAYLOR, LEGGE and MOSS, JJ., concur.