Frank **MORRISON** and Barbara Morrison, Plaintiffs,

v.

**CHRYSLER CORPORATION** and Chrysler Motors Corporation, Defendants.

Civ. A. No. 66–525.

United States District Court
D. South Carolina,
Charleston Division.

April 21, 1967.

Ellis I. Kahn, Charleston, S. C., and Elliott T. Halio, Charleston, S. C., for plaintiffs.

Joseph R. Young, Young, Clement & Rivers, Charleston, S. C., for defendants.

### ORDER

HEMPHILL, District Judge.

On July 20, 1966 plaintiffs filed their complaint seeking recovery against defendants for "breach of its (Chrysler's) manufacturer's passenger car warranty and fraud." They demanded actual and punitive damages in the sum of $25,000 and costs. The complaint stated, in substance, that the Morrisons had purchased from authorized dealer Langston Motors, Inc. of Charleston Heights a 1966 Plymouth "Satellite" for the price of $4,-556.41. They were given a warranty by Chrysler which is alleged as follows:

FIFTH: That the obligation of CHRYSLER CORPORATION under this warranty is limited to repairing or replacing, at its option, any part or parts of the passenger car that proves to be defective within the applicable provisions of this warranty;

that service under this warranty shall be performed by any CHRYSLER MOTORS CORPORATION authorized dealer, at the dealer's place of business, without charge for replacing parts or labor.

The complaint further states that shortly after the purchase of the car, defects appeared, troubles descended, and, at great inconvenience, expense, loss of time, etc., plaintiffs had the car repaired by Langston. They alleged that the vehicle was a used vehicle with many defects and that defendant, with knowledge of the defects and with knowledge that it could not carry out its warranty to repair or replace, sold the car under the warranty and perpetrated a fraud upon the plaintiffs. An offer to rescind the contract of sale was also alleged.

Defendants generally deny the allegations of the complaint, including the existence of the alleged defects. They maintain that no privity [1] exists between the parties, and they allege generally that warranty obligations have been fulfilled.

Plaintiff's exhibit 3, introduced at the trial, was a hard paper back pamphlet on the cover of which was written in large letters "Plymouth Belvedere", and in conspicuous but smaller letters, "1966 Operating Instructions (Includes Warranty)." On page 2 of this pamphlet was the "Manufacturer's Passenger Car Warranty". Those which applied in this particular warranty were as follows:

(1) Chrysler Corporation, as manufacturer warrants to the original purchaser the new vehicle identified herein, including all equipment or accessories (except tires) manufactured or supplied by it, to be free from defects in material and workmanship under normal use and service for twelve thousand (12,000) miles of operation or twelve (12) months after delivery to the original purchaser, whichever event occurs first.

(2) As an express condition of the application of this warranty to the engine, the owner is required to have the engine oil changed every three months or 4,000 miles, whichever comes first, and the engine oil filter replaced every second oil change. The owner must retain evidence that such service has been performed.

(3) Chrysler Corporation's obligation under this warranty is limited to repairing or, at its option, replacing any part or parts of the vehicle that prove to be defective within the provisions of this warranty. Service under this warranty shall be performed by any Chrysler Motors Corporation Authorized Dealer, at the dealer's place of business, without charge for replacement parts or labor.

(4) This warranty shall not apply if the engine or drive train components of the vehicle shall have been altered from the manufacturer's specifications or modified in any manner; nor shall this warranty apply to any repairs or services required as a result of using parts not sold or approved by Chrysler Corporation. This warranty shall not apply if the vehicle shall have been subject to misuse, negligence, or accident. Misuse of the vehicle includes, but is not limited to, all forms of extreme operation, such as racing or other sustained high speed use, acceleration trials or wide-open throttle operation or other high speed acceleration, or shifting transmission gears at high engine RPM.

(5) This warranty does not apply to parts replacements, mechanical adjustments, repairs or other servicing normally made or required as maintenance, such as replacing spark plugs, condensers, ignition points, filters, etc., or performing wheel alignments, wheel balancing, brake adjustments, engine tune-ups, cleaning fuel system, etc.

(6) THIS WARRANTY IS THE ONLY WARRANTY APPLICABLE TO THE VEHICLE IDENTIFIED HEREIN AND IS EXPRESSLY IN

---

1. This was not seriously pressed by Chrysler on trial.

LIEU OF ANY WARRANTIES OTHERWISE IMPLIED BY LAW: INCLUDING, BUT NOT LIMITED TO, IMPLIED WARRANTIES OR MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. THE REMEDIES UNDER THIS WARRANTY SHALL BE THE ONLY REMEDIES AVAILABLE TO THE OWNER OF THE VEHICLE OR ANY OTHER PERSON, AND NEITHER CHRYSLER CORPORATION, CHRYSLER MOTORS CORPORATION NOR THE AUTHORIZED SELLING DEALER ASSUMES ANY OTHER OBLIGATION OR RESPONSIBILITY WITH RESPECT TO THE VEHICLE IDENTIFIED HEREIN, AND NEITHER ASSUMES NOR AUTHORIZES ANYONE TO ASSUME FOR ANY OF THEM, ANY ADDITIONAL LIABILITY IN CONNECTION THEREWITH.

The above is the warranty which is the subject matter of this action.

The automobile is equipped with a street version "Hemi-head" engine which is a very high performance engine. The regular "Hemi-head" engines are used for racing. The automobile has the standard Chrysler warranty, except that the warranty was limited to twelve months, or 12,000 miles, whichever occurs first, rather than the standard warranty of 5 years or 50,000 miles.

Shortly after the car was purchased, several defects in the automobile appeared. Among these were the following. The heat riser valve rattled and had parts missing, and because parts were not readily obtainable, it had to be welded open. The right valve cover cap was missing. It was later replaced. There were minor electrical difficulties, a leak near the glove compartment, and the chrome on the right rear fender was buckled. The right front fender had, for reasons not explained, been repainted. The repainted fender did not completely match the remainder of the body: at least it was possible to tell where it had been masked off and sprayed. The engine was "pinging" because the engine inserts were defective; a substantial overhaul job followed.

The parts were not available at Langston Motors, and Morrison had to wait approximately 12 days for his car to be returned. Three days later Morrison experienced further engine noises and called Langston's service shop. There was no answer so he started to drive his car in, but the engine "blew" after he had gone a short distance. This time it was in the shop for approximately 6 weeks, and the engine, among other things, had to be replaced. At that time the car had been driven a total of 2,477 miles.

During the time it was in the shop for these repairs under the warranty, the car with the hood off and the engine out was left exposed to the elements in an open lot.

During this six week period Morrison offered to drive to defendants' parts depot in Atlanta to obtain the needed parts, but he was told they were not available there either.

The automobile used approximately 5 quarts of oil the first 500 miles and approximately 15 quarts of oil the first 2,400 miles. Spark plugs had to be replaced at 1,700 miles.

The testimony clearly established that plaintiffs' car was special in that its engine was a modified racing engine and thus different from the other engines of Chrysler's manufacture. For example, Mr. Charles Vaden, the service manager, and Mr. Austin Mason, the mechanic who worked on the car, testified that the engine adjustments are different, the mounting is different, the maintenance is different, etc.

The uniqueness of the automobile can be easily seen by a close examination of the testimony of Mr. Audrey E. Bates, Sales Manager of Langston Motors, Inc. He testified how he paid special attention to the plaintiffs' car when it was unloaded from the van, how he would not let "just anyone" demonstrate it, and how he kept the keys in his possession

so that there would not be any use or demonstration of the car outside of his supervision.

It is established that no local employees were especially trained by Chrysler to work on this car which it produced. Mason was asked: Q. "You are just not that familiar with a Hemi engine?" A. "Not as far as the keeping up or what is supposed to be done or what not, I do not know." When defendants were asked about the training given to the mechanics on this special car, they replied: "Yes, defendants prepared and distributed to all Plymouth dealers, including Langston Motors, Inc., a bulletin containing technical information relating to the 1966 Hemi powered Plymouth Belvedere models * * *." There were no training films on the Hemi shown to the local mechanics.

█ It appears that each complaint received the attention of Langston, and there is no evidence but that parts were replaced, adjustments made, at no expense to plaintiffs. In addition, when the satellite was at the shop for repairs, plaintiffs were furnished a vehicle for transportation purposes. The debris that remains consists of the scattered inconveniences, failures to give relief with the speed to which plaintiffs claim they were entitled. This court cannot by judicial classification, stretch the broad tent of fraud to cover these acts.

Plaintiffs rely on Gomillion v. Forsythe, 218 S.C. 211, 62 S.E.2d 297, 302, 53 A.L.R.2d 169, and its definition of the requisites of a cause of action based on fraud:

█t must appear: (1) That defendant made a material representation; (2) That it was false; (3) That when he made it he knew it was false, *or made it recklessly, without any knowledge of its truth and as a positive assertion;* (4) That he made it with the intention that it should be acted upon by plaintiff; (5) That plaintiff acted in reliance upon it; and

(6) That he thereby suffered injury. There exists here no false representation of Chrysler as to its product. It is obvious that there is a warranty, but this court must determine whether there was a breach of the express warranty.

Plaintiffs claim fraud. Perhaps they intended to rely on an implied warranty. If so, the relation between the *time and manner* of repair is so related to the express warranty to *replace and repair* that the latter precludes the former. Georgetown Towing Co. v. National Supply Co., 204 S.C. 445, 29 S.E.2d 765, 766 (1944) citing Black v. B. B. Kirkland Seed Co., 158 S.C. 112, 155 S.E. 268. Wholly different matters or subjects of warranty do not exist here. There is but one warranty. This calls for examination of the warranty (numbered by the court for convenient reference).

Paragraph 1 warrants to "the original purchaser the new vehicle * * * to be free from defects in material and workmanship * * *" Paragraph 3 specifically limits Chrysler's obligations to making good, repairing or replacing defective parts within the time limited. There exists here no other obligation which arises, except to replace, repair, etc. when called to the attention of proper authority—in this case Langston Motors.

Similar but distinguishable issues are discussed in Cannon v. Pulliam Motor Company, 230 S.C. 131, 94 S.E.2d 397 (1956). Plaintiff asked damages for breach of warranty, recovered, and Ford appealed. The court, ruling that the failure to correct the trouble was a breach of warranty, stated: "We think the evidence clearly warranted submission to the jury of the question of whether there was breach of contract. The car was carried to the dealer twice a week for a period of several months. Although numerous parts were replaced, there is abundant evidence tending to show that the *trouble was never remedied.*" (Emphasis added).

█ Morrison does not present such a state of affairs. The record reveals that Chrysler did repair; no evi-

dence of refusal, or failure, to perform is present. As was pointed out in *Cannon:*

> There can be no doubt that the parties had a right to contract for a limited warranty. Livingston v. Reid-Hart Parr Co., supra [117 S.C. 391, 109 S.E. 106]; Liquid Carbonic Co. v. Coclin, 161 S.C. 40, 159 S.E. 461. It is equally clear that under the warranty here involved no liability arises until warrantor, after having been given a reasonable opportunity to remedy the defects, fails or refuses to do so. 94 S.E.2d 397, 400.

*Cannon* also gives authority to the rule that *inconvenience* is not an element of damages in a suit for breach of warranty.

This court dismisses the issue of privity. Defendants in effect abandoned this defense on trial. The existence of privity does not alter the reasoning or the result.

Morrison has failed to discharge his burden of proof.

Defendants are entitled to judgment.

And it is so ordered.