24830. REDDY-WALDHAUER-MAFFETT CO. *v.* SPIVEY
*et al.*

Decided February 25, 1936. Rehearing denied March 31, 1936.

*Hester & Clark,* for plaintiff in error.
*Abrahams, Bouhan, Atkinson & Lawrence,* contra.

MacIntyre, J. Considering the evidence in its most favorable light to the plaintiff's case, it in effect shows that the defendant company owned a Ford truck, for which it furnished all the gasoline. The truck was in general charge of Burnsed, and was used for hauling furniture. At night the truck was "stored in my [Burnsed's] yard for the purpose of bringing me [Burnsed] back in the mornings and caring for the truck also." Burnsed made no charge to his employer for "storage" of the machine. Burnsed's

employer had cautioned Burnsed as to the use of gasoline, and on one occasion Burnsed told Mr. Maffett that he could keep the truck in a garage in town; but the truck was left in Burnsed's care. Burnsed lived on the Louisville Road a few miles west of Savannah. Burnsed reached his house about 7 p. m. on the evening of the collision. He stopped there only "a few minutes," just long enough to pick up his wife, before going about a little less than a mile westward on the Louisville Road to his brother's house. He left his brother's house between 10 and 11 o'clock that night. His purpose in getting back to his own house "was to store the car there for the night and then use it in the morning for coming in." On this return trip he ran out of gasoline, a short distance from his house. He was trying to procure gasoline from a passing truck when the collision occurred. When the servant first arrived at his home from the City of Savannah on the night in question, it was his duty then to park the car and put it up for the night. That was all he was expected to do. He had no authority, either expressed or implied, to use the machine for his own convenience in going to see his brother in an opposite direction from the City of Savannah. The whole trip from his home to his brother's and return was unauthorized and beyond the scope of his authority. Colwell v. Ætna Bottle &c. Co., 33 R. I. 531, 536 (82 Atl. 388). When the servant first reached his home and parked the car, this particular journey of the servant from Savannah to his home on behalf of the master was ended, or at least the relationship of master and servant had been for the time suspended. Greenberg v. Lotz Asbestos Co., 109 Conn. 441, 447 (146 Atl. 834). And when the servant later re-entered the car on the same night and started to see his brother, he began another or a new journey wholly and exclusively for his own purpose, without the knowledge or consent of the master, and at the time of the accident he was on the return portion of his own private independent journey. Neither in the going nor in the returning was this trip in furtherance of the master's business; and the acts of the chauffeur were not connected with his service, nor were they performed within the scope of his employment. Eakin v. Anderson, 169 Ky. 1 (183 S. W. 217, Ann. Cas. 1917D, 1003) ; Hickson v. Walker Co., 110 Conn. 604 (149 Atl. 400, 68 A. L. R. 1044) ; Steffen v. McNaughton, 142 Wis. 49 (124 N. W. 1016, 26 L. R. A. (N. S.) 382, 19 Ann. Cas. 1227).

The defendant in error insists that the case of *Atlanta Furniture Co.* v. *Walker,* 51 *Ga. App.* 781 (181 S. E. 498), is controlling. That decision, however, was based on the principle "that when the servant has temporarily diverged from the course which he should have taken, he may properly be said to have resumed his master's business when he is returning to the proper course." 7-8 Huddy's Cyc. (9th ed.) 259. But in the instant case the situation is different. Here the servant was not permitted to use the car for his own benefit during the interval before he was required to act for the owner; that is to say that during the interval when he first parked his car at his home on the night in question, and the following morning when the car was to be used "for the purpose of bringing me [Burnsed] back to Savannah," the servant (Burnsed) was not permitted to use the car for his own purpose; the use of the car during this interval was without the knowledge or consent of the owner, and was *entirely* unauthorized. Danforth *v.* Fisher, 75 N. H. 111 (71 Atl. 535, 21 L. R. A. (N. S.) 93, 139 Am. St. R. 670). The conduct of the servant took him outside the scope of his employment, and his conduct was a complete departure instead of a "deviation" or "detour" still incidental to his employment. *McIntyre* v. *Hartfelder-Garbutt Co.,* 9 *Ga. App.* 327 (71 S. E. 492); *Greeson* v. *Bailey,* 167 *Ga.* 638 (146 S. E. 490); *Powell* v. *Cortez,* 44 *Ga. App.* 205 (160 S. E. 698); *Dawson Chevrolet Co.* v. *Ford,* 47 *Ga. App.* 312 (170 S. E. 306); *Selman* v. *Wallace,* 45 *Ga. App.* 688 (165 S. E. 851); Hickson *v.* Walker Co., supra.

■ When the conduct of the chauffeur took him outside the scope of his employment and when his conduct was a complete departure, instead of a deviation or detour incidental to his employment, the mere retention of the employee, after knowledge of all the facts, would not constitute ratification on the part of the employer. When Burnsed took the car off to his brother's house and went for the purposes stated, he did not pretend to be acting for the company, nor in fact, was he so acting. He was acting for himself, and not at all for the company. His conduct therefore did not purport to be for, and it in fact was not that of, the company. He was acting solely for himself; and "there is no such thing as a master assuming, by ratification, liability for an act of another in which the master had no part." Knight *v.* Laurens Motor-Car

Co., 108 S. C. 179 (93 S. E. 869, L. R. A. 1918B, 151). "There can, of course, be no ratification unless the act was done for the master, or at least purported to be done for him." 39 C. J. 1266, § 1448.

There were two counts originally in the petition and the defendant amended and added count 3; and on the trial the court instructed the jury to find, if at all, on the third count. The instructions, therefore, automatically rendered moot or harmless all objections predicated on the first two counts. *Reidsville &c. R. Co.* v. *Baxter*, 13 *Ga. App.* 357 (79 S. E. 187). As to count 3, the plaintiff pleaded the statement of facts relied on, and set up preliminary facts which he claimed to have established the relationship of master and servant, or principal and agent, between the company and Burnsed. A demurrer admits only the facts pleaded, not the legal conclusions drawn by the pleader. Neither the evidence introduced, considered in its most favorable light to the plaintiff, nor the facts as alleged in count 3 of the petition, entitled the plaintiff to recover; for the principal, or master, is responsible for the negligence of the agent or servant only as to acts done within the scope of the agency or service. *Lewis* v. *Amorous,* 3 *Ga. App.* 50, 53 (59 S. E. 338). Having reached the conclusion that at the time and place of the accident Burnsed was not engaged in the service of the company, it is unnecessary to discuss the question of Burnsed's negligence as the cause of the accident. It was error to overrule the motion for new trial.

*Judgment reversed. Broyles, C. J., and Guerry, J., concur.*

ON MOTION FOR REHEARING.

MacIntyre, J. The movant contends: "The plaintiff, in attempting to establish the liability of Reddy-Waldhauer-Maffett Company, did not rely solely on the relationship of master and servant between it and Burnsed. The plaintiff asserted that the owner of the truck was [also] liable on the theory that it permitted a defective vehicle to be placed in the hands of another party, and that under the familiar rule of law it is responsible for injuries proximately resulting from the use of such a vehicle. The defect alleged was the absence of a proper red rear light." We had thought that the second headnote and the opinion covered the point raised in the motion for a rehearing. However, it may not be as specific as it should have been with reference to this point.

We therefore say that on the night when the collision occurred the vehicle had not been placed in the hands of the employee (Burnsed), but on the contrary Burnsed had taken and used the car when he was not permitted to do so; and even if the owner knew that the car was out of repair in that no rear red light was attached as required by the statute, but, on the night in question, did not know that the employee would use the car, it would not create a liability on the part of the owner. The use of the car during the interval referred to in headnote 2, and on the trip to and from Burnsed's brother's house, was without the knowledge or consent of the owner, and was entirely unauthorized. We can not approve so broad a ground of liability on the part of automobile owners as is contended for by the movant. In these circumstances, the fact that the machine was defective in that it did not have a rear red light attached when being driven by Burnsed at night does not make an exception to the general rule that the owner of a car who was not present at the infliction of an injury can not be made liable, except it be shown that the person in charge not only was the agent of the owner, but also was engaged at the time in the business of his master. In short, at the time of the collision Burnsed was *not permitted* to use the car. He was using it without the knowledge, consent, or authority of the owner. He was not the agent of the owner on this trip, nor was he engaged in the business of his master. The fact that the defect in the car was that it did not have a rear red light attached, even if known to the owner, would not in this case create a liability on the part of the owner, where the owner on the night in question did not know the employee would use the car. See Gordon *v.* Texas & Pacific Mercantile &c. Co. (Tex. Civ. App.), 190 S. W. 748; 7-8 Huddy's Enc. (9th ed.) 251 (76).

*Rehearing denied. Broyles, C. J., and Guerry, J., concur.*