33198. STUDEBAKER CORPORATION *v.* NAIL.

DECIDED NOVEMBER 16, 1950. REHEARING DENIED DECEMBER 1, 1950.

*Smith, Kilpatrick, Cody, Rogers & McClatchey,* for plaintiff in error.

*Roland, Neeson, Weldon Shows, Clarence Bell,* contra.

FELTON, J. ■ The face of the instrument relied upon by plaintiff is as follows:

"Dealer Service Policy For Studebaker Owners.

"Preparation.

"This motor vehicle has been properly prepared before delivery to the owner, in accordance with standard factory instructions.

"Parts and Labor.

"For ninety days after delivery to the original purchaser, provided the vehicle has not been driven to exceed 4,000 miles, any parts (including all original equipment except tires) which are replaced under the terms of the Standard Factory Warranty will be installed by any authorized Studebaker dealer in the United States or Canada without charge to the owner for material or labor. The advantages of this arrangement for any vehicle that is away from the point of purchase are obvious.

"Adjustment Services.

"The owner is entitled to receive gratis, as required, the lubrication and adjustment services as listed in this policy. These services are to be completed within ninety days following the date of delivery of the vehicle and before such vehicle has been driven to exceed 4,000 miles. These services will be performed gratis only by the dealer from whom the vehicle was purchased and advance arrangements should be made with him if these services are to become due while the owner is touring or after a change of residence.

"Vehicles to Which Applicable.

"This Service Policy applies to new Studebaker motor vehicles purchased from franchised Studebaker dealers, except vehicles which have been used by dealers as demonstrators. In the case of demonstrators the provisions of the previous paragraph entitled 'Parts and Labor' apply for the unexpired portion of the time and mileage limits which are measured from the date on which the demonstrator was placed in service by the dealer.

"Inspection.

"Throughout the life of the vehicle the owner is entitled to have it inspected without charge by any authorized Studebaker dealer, provided such inspection requires no adjusting, dismantling, disassembling of parts, or use of specialized equipment.

"Service Identification.

"This copy of the Dealer Service Policy, properly signed by the dealer selling the vehicle, will serve to introduce the owner to any other authorized Studebaker dealer and entitle him to receive service in accordance with this policy. The owner should carry this policy and other identification with him for presentation when necessary.

"Regular Maintenance.

"Parts and Service Charges.

"Studebaker owners travel with the assurance of a friendly, nation-wide service organization. Studebaker branch offices are conveniently located in leading cities throughout the country. For the benefit of owners, Studebaker has provided its dealers with published parts list prices, and recommended labor schedules on regular maintenance work. Genuine Studebaker parts are sold through Studebaker dealers and Authorized Service Stations and can be procured throughout the United States and Canada at established prices.

"Issued by Johnson-Winge Motor Company.

by C. D. Davis
Signature of Dealer
Not Valid Unless Signed"

The reverse side of such instrument is as follows:

"Standard Factory Warranty

"We warrant each new motor vehicle sold by us to be free from defects in material and workmanship under normal use and service, our obligation under this warranty being limited to

making good at Studebaker factories any part or parts thereof, including all equipment or trade accessories (except tires) supplied by Studebaker as standard or optional equipment, which shall, within ninety (90) days after making delivery of such vehicle to the original purchaser or before such vehicle has been driven four thousand (4,000) miles, whichever event shall first occur, be returned to us with transportation charges prepaid and which our examination shall disclose to our satisfaction to have been thus defective; this warranty being expressly in lieu of all other warranties, express or implied, and of all other obligations or liabilities on our part, and we neither assume nor authorize any other person to assume for us any other liability in connection with the sale or use of our motor vehicles.

"This warranty shall not apply to any motor vehicle which shall have been repaired or altered outside Studebaker factories in any way so as, in our judgment, to affect its stability or reliability, nor which has been subject to misuse, negligence, or accident, nor to any commercial motor vehicle sold by us which shall have been operated at a speed exceeding the factory rated speed, or loaded beyond the factory rated load capacity.

"We reserve the right to make changes in design or to make additions to or improvements upon our products without incurring any obligation to install the same on vehicles previously built.

The Studebaker Corporation."

This instrument was delivered to plaintiff by Johnson-Winge Motor Company at the time he purchased the automobile. Mr. A. O. Johnson, a partner in Johnson-Winge Motor Company, testified concerning the above-quoted instrument: "When I sold this car to Mr. Nail, I delivered to him this so-called dealer service policy, signed by a representative of our company, the bookkeeper, who is authorized to sign it. . . With each new car we sell we give the purchaser the dealer service policy. That is the one that has the warranty on it. I get them from Studebaker. That comes with the car. It is not any good unless I sign it, though. That is the warranty I make to the customer over my signature." Without deciding whether an agency existed between defendant and Johnson-Winge Motor Company for

any other purpose, we think an agency did exist for the purpose of delivering or issuing defendant's warranty to plaintiff. This is shown by the contents of the instrument delivered to plaintiff at the time he purchased the automobile and the testimony of Mr. Johnson to the effect that such instrument was prepared by defendant and delivered to him by defendant with the cars for the purpose of delivering it to purchasers of new Studebaker automobiles. Any agreement between defendant and Johnson-Winge Motor Company to the contrary is not binding on or conclusive against plaintiff as the evidence does not show that plaintiff saw or relied upon any instrument other than the one sued on. From the contents of the instrument and the circumstances surrounding its issuance to plaintiff, it is shown that the "Standard Factory Warranty" set out on the back side of the instrument was intended by defendant to be a direct warranty by it to the plaintiff purchaser. It is true that a warranty of personalty does not run with the article warranted. But a manufacturer may warrant his products to ultimate purchasers. In this day of progressive and highly competitive business, a warranty of his product by a manufacturer to the ultimate purchaser of his product may be intended by the manufacturer as an added inducement to the ultimate purchaser to buy the product of that manufacturer rather than that of his competitor. The consideration for such a warranty would be the purchase by the ultimate purchaser of that manufacturer's product, which is in effect a direct purchase, as it would have been if the purchaser had bought from an agent of the manufacturer instead of an independent dealer or contractor. There are many products sold today where the manufacturer warrants to the ultimate purchaser the virtues of his product and intends to bind himself by such warranties. See: "Business Practice Regarding Warranties in the Sale of Goods" by Bogert and Fink, 25 Ill. L. Rev. 400. Certainly it would be a great injustice to the buying public not to hold enforceable a warranty made by a manufacturer and relied upon by the purchasers. It is the ultimate purchaser who makes the manufacture of the product possible, the purchase by intermediate distributors and dealers being merely a means of distribution to the ultimate purchaser. This decision deals only with express warranties where a manu-

facturer expressly and directly warrants his products to the ultimate purchaser. We recognize the principle that implied warranties of law are imposed only as between parties in privity of contract, but they are rules of law which the law imposes on contracting parties. Generally the law does not bridge the gap between the manufacturer and ultimate purchasers by implying warranties, but it throws up no barrier preventing a manufacturer from itself bridging the gap. There is no obstacle preventing a manufacturer from making a contract with an ultimate consumer to guarantee an article sold to the latter, directly or indirectly, if the elements of intention to contract and consideration are present, as they are in this case. The court has conducted extended research into the field of warranties but will not indulge in a discussion of the many questions which have arisen relative to different types of warranties and different types of relationships. The rule here announced is believed to be sound under the facts of the case. However, attention is directed to the following excellent articles upon the subject: 46 Harv. Law Rev. 161; 18 Cornell Law Quarterly 445, 450. The court held in *Burkhalter* v. *Ford Motor Co.*, 29 *Ga. App.* 592 (116 S. E. 333), relied upon by plaintiff in error, that an agency did not exist in that case for the purpose of service of process upon an alleged non-resident principal, but the court there also said: "Now we do not mean to hold that it is not possible for the relation of principal and agent to exist in truth despite some contract between the parties to the contrary. In other words, if there is a course of dealing which establishes the relation in fact and in reality, the effect thereof could not be avoided by a secret contract providing otherwise."

■ Plaintiff, in his petition, assigns as his damages that part of the purchase-price paid by him. The purchase-price is a fair measure of damages only where the article bought is totally worthless. The evidence shows that the automobile was not totally worthless. In absence of a more explicit criterion, the proper measure of damages in a breach of warranty in a sale of personalty where the breach does not render the article totally worthless and where the defect constituting the breach can not be or has not been remedied, is the difference between the purchase-price and the actual value of the article at the time and

place of delivery. See *Brandon & Co. v. H. M. Franklin & Co.,* 46 *Ga. App.* 303 (167 S. E. 612), and citations. Plaintiff testified that the defect had not been remedied at the time of repossession of the automobile. There was no evidence introduced from which the court sitting as a trior of facts could determine the actual value of the defective automobile at the time and place of delivery. Where a party sues for specific damages he has the burden of showing the amount of loss claimed in such a way that the jury may calculate the amount of loss from the data furnished and will not be placed in a position where an allowance of the loss is based on guesswork. *National Refrigerator &c. Co. v. Parmalee,* 9 *Ga. App.* 725 (72 S. E. 191). A verdict for plaintiff for any amount of damages was not authorized by the evidence.

The evidence was conflicting as to whether or not defendant complied with the terms of its warranty and therefore that question was one for the court sitting as a trior of facts to determine. It was a question of fact whether, after several efforts to repair the automobile, plaintiff was unreasonable in finally refusing to bring the car into the dealer for further repairs, under the facts and circumstances of this case, which we do not deem it necessary to relate.

The court erred in overruling the motion for a new trial.

*Judgment reversed. Sutton, C.J., and Worrill, J., concur.*