Clifton L. CANNON, Sr., et al.,
Appellants,

v.

UNITED STATES of America,
Appellee.

No. 16256.

United States Court of Appeals
Fifth Circuit.

March 29, 1957.

Vance Custer, Bainbridge, Ga., E. P. Stapleton, Donalsonville, Ga., Custer & Kirbo, Bainbridge, Ga., of counsel, for appellant.

J. Sewell Elliott, Asst. U. S. Atty., Macon, Ga., Frank O. Evans, U. S. Atty., Macon, Ga., for appellee.

Before RIVES, TUTTLE and BROWN, Circuit Judges.

RIVES, Circuit Judge.

Plaintiffs, appellants here, sued under the Federal Tort Claims Act[1] for the wrongful death of Mrs. Cannon. An Army truck, driven by Pfc. Harold C. Leonard, turned abruptly in the path of an automobile in which Mrs. Cannon was riding as an invited guest, causing a collision resulting in injuries from which Mrs. Cannon died. The defendant, United States, claimed that Pfc. Leonard was not acting in line of duty, that is, within the scope of his employment, under such circumstances that the United States, if a private person, would be liable in accordance with the law of Georgia, in which State the collision occurred.

The facts relating to line of duty were without dispute, and were stated by the district court substantially as follows:

---

[1]. Pertinent provisions of which are as follows:

28 U.S.C.A. § 2674: "The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances * * *."

28 U.S.C.A. § 1346(b): "(b) Subject to the provisions of chapter 171 of this title, the district courts * * * shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

28 U.S.C.A. § 2671: "As used in this chapter and sections 1346(b) and 2401(b) of this title, the term— * * * 'Acting within the scope of his office or employment', in the case of a member of the military or naval forces of the United States, means acting in line of duty."

"Two soldiers, Leonard and Hunter, were dispatched on September 30th, 1954, with a one and one-half ton Army truck from Camp Rucker, Alabama to Camp Stewart, Georgia, to pick up a roll of cable and transport it back to Camp Rucker. They arrived at Camp Stewart at 11:00 o'clock P. M. the same day, spent the night and left the next morning, October 1st, at 8:30 A. M. with their cargo, traveling west toward Camp Rucker. At 4:30 P. M. minding their own business, that is, Government business, and still heading west toward the State of Alabama and Camp Rucker, they passed Club 84, located on U. S. Highway 84 about four miles west of Bainbridge, Georgia, where they noticed a couple of girls sitting out in front. The girls yelled at them. After going on past this club about one-half mile, still traveling in a westerly direction, they decided to go back and see the girls. For that reason, they turned the Army truck around and went back to Club 84 and parked behind the building. There they talked to the girls, played the juke box and had a sandwich. After about a half an hour, the soldier, Leonard, who, at all times here pertinent was the driver of the truck (both soldiers being regularly assigned to military duty as truck drivers), and one of the girls got in the Army truck (leaving Hunter and the other girl at Club 84) and drove east on Highway 84 about one mile, pulled off the highway a short distance and there remained for some time, and then started back in the truck to Club 84. During this return trip, at approximately 6:45 P. M., this Army truck and a Chevrolet automobile, in which Mrs. Cannon was riding, collided at a point approximately twenty-five yards from said Club and on said Highway 84. At the time of the collision, the Army truck was still on Highway 84 and its then immediate destination was Club 84, situated on the southerly side of said highway and it was then Leonard's intention to drive the truck again off the highway to his left and again to Club 84 and to deposit his female passenger there.

"Hunter and his girl had been left at Club 84. He too, talked to his girl, played the juke box and had a sandwich. He did not know where Leonard, Leonard's girl and the truck had gone. He, Hunter, was pretty much interested in Hunter's girl. About an hour after Leonard, his girl and the truck left from behind the building Hunter and his girl went to the next building and about two minutes later Hunter heard a loud crash, ran outside and saw that the Army truck and the Chevrolet automobile had collided."

■■ It seems to be settled that the phrase "line of duty" (28 U.S.C.A. § 2671, Footnote 1, supra) in the Act as applicable to military and naval personnel has no broader significance than "scope of his employment" as used in master and servant cases.[2] This case is controlled by the Georgia doctrine of respondeat superior. Williams v. United States, 350 U.S. 857, 76 S.Ct. 100, 100 L.Ed. 761.

■■ All of the cases recognize that, when a servant departs completely from the work assigned to him in order to accomplish some private mission of his own, he is no longer acting within the scope of his employment. It is a difficult and delicate task, however, to determine just when the erring servant is deemed to return to his employer's service, and there is a vast amount of literature upon that subject.[3] The Georgia cases make a distinction between mere deviation and complete departure from the scope of the

2. United States v. Campbell, 5 Cir., 172 F.2d 500, 503; Hubsch v. United States, 5 Cir., 174 F.2d 7, 8; United States v. Eleazer, 4 Cir., 177 F.2d 914, 918; Paly v. United States, D.C.Md., 125 F.Supp. 798, 805, affirmed, 4 Cir., 221 F.2d 958; Williams v. United States, 9 Cir., 215 F.2d 800, 809, judgment vacated 350 U.S. 857, 76 S.Ct. 100, 100 L.Ed. 761.

3. See, e. g., 1 Restatement, Agency, § 237; 5 Am.Jur., Automobiles, § 377; 60 C.J.S., Motor Vehicles, § 437, p. 1105; Annotations 22 A.L.R. 1409; 45 A.L.R. 486; 68 A.L.R. 1056; 80 A.L.R. 728; 122 A.L.R. 870.

employment.[4]  The facts of each particular case determine in which category it lies.

In the present case, it is true in a general sense that Leonard's overall duties on the long journey began when he drove the truck away from Camp Rucker en route to Camp Stewart and were not completed until his return to Camp Rucker with the roll of cable.  There was, however, a distinct interruption of his duties for the Government when, about one-half mile past Club 84, he turned the Army truck around and headed back to Club 84 to see the girls.  That interruption became more definite and final when he parked the truck behind the building and thereafter drove it on a completely independent trip of his own about one mile back east on Highway 84.  His return from that trip was made necessary by his own wrong in going.  Under the Georgia cases,[5] we think that it is clear that Leonard had not at the time of the collision resumed the service for which he was employed by the Government, and would not have resumed such service earlier certainly than his arrival at Club 84, and the deposit there of his female passenger, if indeed that soon.  Our sympathies lie entirely with the innocent

victims of the tragic consequences of Leonard's wrong, but, under the law, we can see no legal liability of the United States.  The judgment is, therefore,

Affirmed.

---

4. Reddy-Waldhauer-Maffett Co. v. Spivey, 53 Ga.App. 117, 185 S.E. 147, 148; Nicholas v. Calloway, 72 Ga.App. 41, 32 S.E.2d 836, 837; Windsor v. Chanticleer & Co., 89 Ga.App. 116, 78 S.E.2d 871, 873.

5. While it is unnecessary and inappropriate for us to announce any broad generalizations, we recognize that Government counsel has analyzed the Georgia decisions admirably in the following portion of its brief:

"(1) A master is not liable for the acts of his servant during the entire interval of an independent trip, both in the going and in the returning. (Nicholas v. Calloway, 72 Ga.App. 41 [32 S E.2d 836], Reddy-Waldhauer-Maffett Co. v. Spivey, 53 Ga.App. 117 [185 S.E. 147], Cooley v. Tate, 87 Ga.App. 1 [73 S.E.2d 72], Garner v. Souders, 20 Ga.App. 242 [92 S.E. 965], Wilson v. Quick-Tire Service, 32 Ga.App. 310 [123 S.E. 733].)

"(2) A master is not liable for the acts of his servant during the entire outgoing

portion of a gross deviation from the scope of his employment.  (Dawson Chevrolet Co. v. Ford, 47 Ga.App. 312 [170 S.E. 306], Causey v. Swift and Co., 57 Ga.App. 604 [196 S.E. 228], Selman v. Wallace, 45 Ga.App. 688 [165 S.E. 851].)

"(3) A master does not become liable for the acts of his servant on the return portion of a complete deviation from the scope of employment until the employee has resumed the prosecution of his master's business and is again serving his master. (Atlanta Furniture Company v. Walker, 51 Ga.App. 781 [181 S.E. 498]; Atlanta Laundries v. Goldberg, 71 Ga. App. 130 [30 S.E.2d 349]; Palmer, Phinizy, and Connell v. Heinzerling, 34 Ga.App. 544(3) [130 S.E. 537]; Davies v. Hearn, 45 Ga.App. 276, 280 [164 S.E. 273]; Parker v. Smith, 66 Ga.App. 567 [18 S.E.2d 559]; Bailey v. Murray, 88 Ga.App. 491 [77 S.E.2d 103], Bunch v. McLesk[e]y, 42 Ga.App. 130 [155 S.E. 536], [Bunch v. McLeskey], 173 Ga. 545 [161 S.E. 128].)"