## 48832. CHRYSLER CORPORATION v. WILSON PLUMBING COMPANY, INC.
## 48833. DeKALB CHRYSLER-PLYMOUTH, INC. v. WILSON et al.

Pannell, Judge.

Robert Wilson and Wilson Plumbing Company, Inc.

(Robert Wilson being the sole stockholder) brought an action against DeKalb Chrysler-Plymouth, Inc., a local dealer, and Chrysler Corporation, the manufacturer, in four counts. Count No. 1 alleged: "That the defendants, as manufacturer and merchant of the subject automobile, *'did at all times herein, both expressly and impliedly, warrant that the same was merchantable and fit for the ordinary purposes for which an automobile is designed, i. e., a dependable mode of transportation, and that the plaintiff, Wilson Plumbing Co. Inc., relied on said warranties as aforementioned, but said automobile was not merchantable nor fit for the purpose for which it was made and designed and that the defendants did breach said warranties and that the losses incurred are the sole and proximate consequence of the defendants' breach.'* " (Emphasis supplied.) On this count, the plaintiff corporation sought recovery of the purchase price of a new automobile, less the salvage value of the automobile, alleged to be $150, plus expenses involved in numerous repairs, allegedly as a result of defendants' breach of warranties. Count 2 sought the same damages based upon negligent and defective construction. Count 3, on behalf of the individual plaintiff, sought recovery for the alleged wilful and intentional destruction of signs, not complimentary to the defendants, which plaintiff had placed about the subject automobile on a vacant lot owned by plaintiff, after defendants had refused to repair it; and in addition to the damages for the destruction of the signs, sought punitive damages in the amount of $10,000. Count 4 similarly sought damages for a later visit whereby alleged agents of the defendants again attempted to tear down and destroy the signs which had been replaced, and when the plaintiff, Robert Wilson, came out to remonstrate and grabbed the door of the automobile in which the alleged agents were seeking to leave, they attempted to run him down. On this count, Robert Wilson seeks $50 nominal damages and $25,000 punitive damages. Counts 2 and 3 were eliminated from the trial of the case, leaving Counts 1 and 4 for consideration of the jury. After motions for directed verdict by the defendants as to Counts 1 and 4 were

overruled, the case was submitted to the jury on these counts and the jury found a verdict in favor of the plaintiff in the amount of $4,500 on Count 1 and $5 actual damages and $12,000 punitive damages on Count 4. The defendants' motions for judgments notwithstanding the verdict, or in the alternative the grant of a new trial were overruled by the trial judge and the defendants appealed separately to this court.

1. While ordinarily under Code § 109A-2—314 there is no implied warranty existing between a manufacturer and an ultimate consumer, this is due to the fact that no privity of contract exists between the two. See *Chaffin v. Atlanta Coca Cola Bottling Co.*, 127 Ga. App. 619 (194 SE2d 513). However, where an automobile manufacturer, through its authorized dealer issues to a purchaser of one of its automobiles from such dealer admittedly as a part of the sale a warranty by the manufacturer running to the purchaser, privity exists and Code § 109A-2—314 becomes operative. See *Studebaker Corp. v. Nail*, 82 Ga. App. 779, 784 (62 SE2d 198). The manufacturer, therefore, if it desires to exclude the implied warranty arising by operation of law, must meet the requirements of Code § 109A-2—316 (2), that is, by a writing expressly referring to merchantability which exclusion of the implied warranty must be conspicuous. Code § 109A-1—201 (10) defines conspicuous as:" 'Conspicuous' : A term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it. A printed heading in capitals as: (Nonnegotiable Bill of Lading) is conspicuous. Language in the body of a form is 'conspicuous' if it is in larger or other contrasting type or color. But in a telegram any stated term is 'conspicuous.' Whether a term or clause is 'conspicuous' or not is for decision by the court." We must accordingly hold that the trial judge erred in not making such determination rather than submitting this question for decision by the jury. He further erred in charging on implied warranty as to the Chrysler Corporation as the written exclusion of the implied warranty, and as to merchantability, met the requirements of the statute as to conspicuousness.

2. The defendant dealer contends that the plaintiff purchaser signed a "retail buyer's order" which relieved it from all warranties. This order, in small print before the signature on the front of the form, so far as here material recited: "The front and back of this order comprise the entire agreement affecting this purchase and no other agreement or understanding of any nature concerning same has been made or entered into, or will be recognized, I hereby certify that no credit has been extended to me for the purchase of this motor vehicle except as appears in writing on the face of this agreement. I have read the matter printed on the back hereof and agree to it as a part of this order the same as if it were printed above my signature. I certify that I am 21 years of age, or older, and hereby acknowledge receipt of a copy of this order," and "It is understood that *this car is sold as is* and that DeKalb Chrysler-Plymouth, Inc. makes no warranties or representations as to the present or past condition of this car except as specifically stated on the retail buyers order, *as that DeKalb Chrysler-Plymouth, Inc.* does not warrant repairs for any cause, if any, to said car by virtue of accident or mechanical failure." (Emphasis supplied.) The latter language shows clearly that the expression "sold as is" applies only to used cars upon which past repairs to the car by virtue of accident or mechanical failure have been made. Looking to the back of the form, labeled "conditions," we find provisions, some applicable to used cars and some applicable to new cars.

Paragraph 7 of these conditions states: "No warranties are made or will be deemed to have been made by either the dealer or the manufacturer of the new motor vehicle or motor vehicle chassis furnished hereunder, excepting only Chrysler Corporation's current printed warranty applicable to such vehicle or vehicle chassis, which warranty is incorporated herein and made a part hereof and a copy of which will be delivered to purchaser at the time of delivery of the new motor vehicle or motor vehicle chassis. Such warranty shall be expressly in lieu of any other warranty, expressed or implied, including, but not limited to any

implied warranty of merchantability or fitness for a particular purpose, and the remedies set forth in such warranty will be the only remedies available to any person with respect to such new motor vehicle or motor vehicle chassis." However, this paragraph is written in the same size and color type as all the other paragraphs of the "conditions" on the back of the form. Therefore, while this was sufficient to exclude any express warranties on the part of the dealer, it fails completely to comply with Code § 109A-2—316 for excluding the warranties implied by law in Code § 109A-2—314. There was no error in charging the jury on implied warranties as to DeKalb Chrysler-Plymouth, Inc.

The dealer contends, however, that the clause limiting the manufacturer's liability to express warranty (referred to in No. 7 of "conditions" on the order form), which stated that "neither Chrysler Corporation nor Chrysler Motors Corporation, nor the authorized selling dealer assumes any other obligation or responsibility with respect to the condition of the vehicle . . ." was sufficient to relieve the dealer from any implied warranties. It must be noted that this manufacturer's warranty containing this language was delivered to the purchaser at the time of delivery of the purchased automobile, as provided in No. 7 of conditions on the order, and after the purchaser had, by signing the order, obligated himself to purchase the automobile. To hold him bound by such language in the manufacturer's warranty delivered after he was obligated to purchase the automobile and when he, at the moment of delivery, had a warranty implied by law from the dealer under the very document which bound him to make the purchase, would, in our opinion, be contrary to provisions of Code § 109A-2—302, which contains provisions against unconscionable contracts or clauses in contracts. This section reads as follows: "(1) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any

unconscionable result. (2) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination."

Further, the language in this exclusion clause of the manufacturer's warranty which attempts to exclude warranties by the dealer fails, *as to the dealer* to comply with Code § 109A-2—316 by specifically referring to and using the word "merchantability," although *as to the manufacturer* such language was properly used.

While it is a general rule in this state that parties may contract as they please subject to the exceptions of Code § 20-501 et seq., Code § 109A-2—302 (1) modifies this general rule that parties are free to make whatever contracts they please so long as there is no fraud or illegality by giving the courts discretion to refuse to enforce sales contracts under the Georgia Uniform Commercial Code, in whole or in part, which they find to be "unconscionable." Frostifresh Corp. v. Reynoso, 52 Misc. 2d 26 (274 NYS2d 757).

3. The evidence as to breach of warranty covering the period from the time the automobile was purchased until the motor froze up from overheating would authorize the finding that the automobile purchased was a "lemon." Numerous things went wrong and were repaired under warranty and some not repaired, but two major things, trouble with the wiring and electrical system and trouble with the automobile heating up were the major complaints. These two troubles caused numerous trips for repairs and on several occasions the car had to be towed in for these repairs. At about 12,000 miles (the basic warranty was for 24,000 miles or 24 months) the car ran hot on a trip which required constant stops, at which time black "gunk" came out of the radiator when it was drained. This condition was supposed to have been repaired under warranty but the condition persisted and after refusal of the dealer to make any more repairs, others did work on the car draining and flushing the cooling system. Subsequently, after 30,000 miles (and after the cooling system warranty

expired) the motor ran hot and froze. Repairs were refused by the dealer and the manufacturer. This evidence was sufficient to authorize a finding that from the original occurrence down to the final breakdown was due to a defect never remedied, and would authorize the recovery even under the express or an implied warranty.

While there was testimony that a water hose, rotted by water action and heat, was split and that this caused the last overheating and freezing of the motor, the witness so testifying never gave the motor anything but a casual outside visual examination. Neither the defendant nor the plaintiff had the motor disassembled to ascertain whether the overheating was from other causes, such as a cracked block and oil leakage into the radiator, or whether the overheating and pressure caused the hose to break or split. Suffice it to say, the evidence did not demand this finding either way. There was no error in refusing to grant a summary judgment based upon the contention that the evidence was insufficient to authorize a finding of a breach of the express warranty on the part of Chrysler Corporation or the implied warranty on the part of DeKalb Chrysler-Plymouth, Inc.

4. However, the judgment in the amount of $4,500 against the defendants in favor of the plaintiff is unauthorized as there was no evidence to support this amount. The plaintiff admitted that the automobile with a new motor and new wiring would be "all right." There was evidence that putting in a new motor and rewiring would not exceed $900. There was no evidence that the automobile was worth $150 in its present condition as alleged in the petition. There was no evidence that it was worthless. Nor would the bills paid for repairs, claimed to be within warranty, if added to the $900 approach the figure found. A new trial must be granted to both defendants because the amount of the verdict was unauthorized by the evidence.

5. The principal shall not be liable for the wilful trespass of his agent, unless done by his command or assented to by him (Code § 4-312), or he ratifies it (*Crockett Bros. v. Sibley,* 3 Ga. App. 554 (2)(60 SE 326)). The mere retention of employees after knowledge of the act, which is the only evidence of ratification here, is

not sufficient alone to amount to ratification. *Reddy-Waldhauer-Maffett Co. v. Spivey,* 53 Ga. App. 117 (3) (185 SE 147). There is no direct evidence that the principal commanded or assented to the acts of the two salesmen in the trespass to plaintiff's property and person asserted in the 4th count of the petition. However, if the agent committed a trespass in the prosecution of the principal's business, it is by implication of law committed by command of the principal or with his consent. *Planters Cotton Oil Co. v. Baker,* 181 Ga. 161 (181 SE2d 671). The evidence shows that two salesmen of DeKalb Chrysler-Plymouth attended a sales meeting which was over about 9:00 am and were off duty from 9:00 am to 3:00 pm; that is, they were not required to be on the premises where car sales were made. About an hour later they left to visit a customer who had previously purchased vehicles, but solely for a personal visit. According to one of the salesmen, this was done in a company automobile, which was one of the automobiles furnished the salesmen for their own use, as well as business use. According to the testimony of the other salesmen, it was a personal automobile. After leaving the former customer and on their way back to the DeKalb Chrysler-Plymouth place of business, they passed the premises where the Chrysler, the subject matter of this action, was on exhibit, and stopped to look at it, getting out of their automobile to do so. These witnesses' testimony, thereafter, was in sharp conflict with the testimony of the plaintiff and an eyewitness of the occurrence. When the president of the DeKalb Chrysler-Plymouth Company heard about this visit, he told the salesman to not stop there or go on the premises where the Chrysler was on exhibit, but took no other disciplinary action and retained the salesmen in his employ because they were good salesmen. The evidence discloses that the sole duties of these two salesmen was the business of selling automobiles for their employer. There is no evidence that they were so engaged at the time of the occurrence complained about. While a jury might be authorized to find from the evidence that the two salesmen were reacting to an exhibition which might interfere with their future sales of automobiles, there is

absolutely no evidence that at the time of this occurrence they were acting or attempting to act in the course of their employment in selling an automobile or automobiles. See in this connection, *Murphey v. New South Brewery & Ice Co.,* 145 Ga. 561 (89 SE2d 704); *Ryan v. State,* 45 Ga. 128. The case of *Carmichael v. Silvers,* 90 Ga. App. 804 (84 SE2d 668) relied upon by the trial judge in refusing to direct a verdict on Count 4 also involved a salesman but not of automobiles. In that case, the salesman who thought he had made a sale for home improvements, upon being informed that the home owners had changed their minds, went to the home demanding that the contract be signed and in an attempt to enforce the signing of the contract committed an assault and battery upon the wife. That case is clearly distinguishable from the facts of the present case. The trial court erred in refusing to grant a judgment n.o.v. on the 4th count.

6. When plaintiffs called as their first witness the president of DeKalb Chrysler-Plymouth, Inc., objection was made to this witness testifying unless plaintiff, Robert Wilson, was sequestered as a witness, or first testified. The trial judge permitted the plaintiff Wilson to remain and the witness to testify. This was a matter entirely within the discretion of the trial judge. We find no error. See *Boutelle v. White,* 40 Ga. App. 415 (149 SE 805); *Cone v. Davis,* 66 Ga. App. 229 (14), 238 (17 SE2d 849).

*Judgments reversed. Bell, C. J., Eberhardt, P. J., Quillian, Clark, Stolz and Webb, JJ., concur. Deen, J., dissents.*

Argued January 10, 1974 — Decided June 26, 1974 — Rehearing denied July 18, 1974 —

*Alston, Miller & Gaines, Ben F. Johnson, III,* for Chrysler Corp.

*Levine, D'Alessio & Cohn, Morton P. Levine,* for DeKalb Chrysler-Plymouth.

*Rich, Bass, Kidd & Broome, Casper Rich, Bryan Cavan,* for appellees.

DEEN, Judge, dissenting in part.

Division 5 of this opinion relates only to the defendant DeKalb-Chrysler Plymouth, Inc. and grants it a judgment n.o.v. I dissent. The evidence shows that after the plaintiff had taken his car back to this dealer time and time again, after they had ignored his demands, claimed to have done work which was not in fact performed, failed to make repairs, and finally simply refused to have anything more to do with the plaintiff or the vehicle — which under the view of the majority was a breach of warranty — and after open hostility in the dealer's garage between the plaintiff and the service manager, the plaintiff had the car pulled away from the garage and placed on the plaintiff's property with six signs of four by eight plywood, visible from the road, whereupon two employees of this defendant, during working hours, came up on the property, tore down signs reading, "This is a pile of junk," "This car comes from DeKalb Chrysler Plymouth" and "Undrivable," broke out some of the glass of the car, and got back in their car and, when the plaintiff followed them and said, "Why did you do that?" they said, "Because we don't like you" and cut the car so that he was in danger of being run down. The plaintiff and these employees had had no contacts except in relationship to the Chrysler, the breach of warranty and failure to repair which had engendered the ill feeling between the plaintiff and the company. The acts were rational in this context and utterly irrational in any other. The servant does not cease to be a servant simply because his acts are motivated by ill will or malice; the question is whether the wilful tort is committed for personal reasons disconnected with the employment, or whether it grows out of the employment. "If the master might defend by showing that at the time of the commission of the tort by his servant upon another, within the course of his employment, the servant acted through anger, malice, or ill will, the purpose of the statute (§ 105-108), making the master liable for voluntary torts, would be defeated in most instances." *Frazier v. Southern R. Co.*, 200 Ga. 590, 593 (37 SE2d 774). See also *Harris, Inc. v. Black,* 130 Ga. App. 867 (204 SE2d 779). There was evidence here that the perpetrators were

employed by the defendant, they were within the course of their employment at the time, they were in a company car, and their hostility related directly to the quarrel between the plaintiff and the corporation. Obviously, this corporate defendant is not going to call a board of directors meeting to ratify the assault. Unless (and this is the holding in *Frazier*) such evidence as is present here makes a jury question, the holding that the master is responsible for the wilful as well as the negligent torts of the servant within the scope of employment is without meaning.